# McKenna v. Citizens' Natural Gas Company.

198        31
208      ¹499
d 24 SC ⁴ 32
198        31
210      ⁴104
27 SC ³582
198        31
f219      ³330

*Negligence—Damages—Expectancy of life—Life tables.*

In a damage case a witness will not be permitted to testify from a life table as to expectancy of life, where there is no evidence to show on what the table is based, or from what material it was constructed. Kerrigan v. Penna. R. Co., 194 Pa. 98, followed.

*Negligence—Natural gas—Explosion.*

Where an explosion which occurs in a house supplied with natural gas by one gas company is caused by the negligent mistake of an inspector of another company in opening high pressure valves which he mistook for the valves of his own company, the second company, in a suit against it for damages by the owner of the house, will not be permitted to show that the unsafe condition of the meter and regulator in the house contrib-

uted to the accident, or that the first company was negligent in the construction and maintenance of its line.

Where two parties are each guilty of negligence contributing to an injury, the tort of the one is no defense to an action against the other.

*Negligence—Damages—Earning power.*

In an action to recover damages for personal injuries, it is error for the court to charge the jury that they may allow for loss of earning power, where the plaintiff has offered no evidence whatever as to his earning power, either before or after the accident.

Argued Oct. 18, 1900. Appeal, No. 50, Oct. T., 1900, by defendant, from judgment of C. P. Beaver Co., Dec. T., 1897, No. 177, on verdict for plaintiff in case of Patrick Henry McKenna v. The Citizens National Gas Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Trespass for personal injuries. Before Wilson, P. J.

At the trial it appeared that on the night of September 27, 1897, an explosion occurred in plaintiff's house at New Brighton by which he was injured and his wife was killed. The cause of the accident was the fact that an employee of the defendant had mistaken a by-pass of the Bridgewater Gas Company which supplied plaintiff's house, for a by-pass of his own company, and had opened the high pressure valves of the by-pass. The details of the accident are described in the opinion of the Supreme Court.

When Samuel Henry was on the stand, he stated that he was a life insurance agent, and that he had in his possession tables known as the "Combined Actuaries' Experience." He was then asked this question:

"Q. Will you tell us the expectancy of the life of Mary McKenna on the 28th day of September, 1897?"

Objected to as incompetent.

The Court: I think it is proper for them to show that. The objection is overruled, and upon request of counsel a bill of exceptions sealed to the defendant. [1]

The Witness: The expectancy of life at fifty-seven years of age is fifteen years, two hundred and fifteen days and a fraction.

"Q. Fifteen years, two hundred and fifteen days and a fraction. Would you look at your tables, Mr. Henry, and tell us

what the expectancy of life of Patrick Henry McKenna would be at the age of sixty-three?"

The same objection is made by the defendant and the same ruling given by the court to the question in regard to Mrs. McKenna. [2]

The Witness: It would be twelve and a very small fraction of a year.

The defendant proposed to prove by Ferdinand Gordon the custom of the Bridgewater Gas Company as regards the making of connections with the house, to wit: That the company carried the gas from the main to the curb, and from that point the gas was conveyed into and through the houses by the owners of the premises; the pipes from the curb to the meter being furnished and put in place by the owner of the property; and that Mr. McKenna's service and meter were laid and furnished according to this custom.

And this to be followed by evidence that the meter in the McKenna house was put in for McKenna by a contractor furnishing it to him.

And this to be followed by evidence that the meter as put in was the meter not in ordinary use, and not a safe meter for the furnishing of natural gas even at a low pressure or ordinary pressure.

This offer for the purpose of showing contributory negligence.

The above offer is objected to on the part of the plaintiff. (1) It is incompetent, irrelevant and immaterial. (2) It is incumbent upon the defendant to show what the Bridgewater Gas Company did at the particular house in question, not their custom. (3) That the defendants do not even propose to show that the gas escaped through the meter.

The Court: The objection will have to be sustained. It is not proposed in this offer to show that the escape of this gas was the fault of the meter or the service pipe. They might as well try to show that the chimney was not built right, if it was not the purpose of showing that the appliance was unsafe through which the gas escaped. The objection is sustained and a bill of exceptions sealed to the defendants. [3]

Defendant's counsel proposed to ask the witness whether he knew that the tin meter already referred to was in use at the

McKenna house at the time of the explosion, and whether or not it was the ordinary meter in use for the delivery of gas into buildings; to be followed by evidence that the meter was too weak for the transmission of gas at low pressure; this for the purpose of showing contributory negligence.

Objected to on the part of the plaintiff, for the reason that there has yet been shown no connection between the tin meter and the accident of which plaintiff complains, and it is therefore incompetent, irrelevant and immaterial.

2. The witness has not shown himself competent to give an opinion as to a meter.

3. It is not shown that the gas escaped into the building by reason of any defect in the meter.

Mr. Rodgers: "Q. Mr. Gordon, I understand you to say that you were connected with the Bridgewater Gas Company for about thirteen years? A. Along about that; yes, sir. Q. And in what capacity? A. Setting meters, reading meters and laying lines. Q. And what other gas companies in this neighborhood are you acquainted with, practically? A. I knew the Citizens Gas Company; that was in Brighton. Q. And what about the company operating in East Liverpool? A. The Ohio Valley. Q. Were you acquainted with that? A. I worked for them eighteen months. Q. Are you acquainted with the meters in use by those three companies? A. Well, I am to a certain extent; I have not seen all the meters of the other companies. I have of the Bridgewater Gas Company; I have read them all and seen lots of the other ones, not just all of them."

The last preceding offer by defendant's counsel and objections by plaintiff's counsel renewed.

The Court: To admit the testimony you would have to assume that the gas escaped into the building through the tin meter, or by reason of the breaking of the tin meter. As there is no evidence of that in this case, the objection is sustained, and at request of counsel a bill of exceptions sealed to the defendant. [4]

Defendant's counsel proposed to ask the witness where the weakest point would be on the line from the curb in; for the purpose of showing that if any of the connections broke, it would be the tin meter.

Plaintiff's counsel object as being immaterial, and as being

an assumption. It is objected to as further incompetent because it would be an inference and nothing better than an inference; and there is no evidence to show that he knew anything about the other connections leading from the street into the house. It is objected to further as incompetent if shown, because the witness cannot infer from any knowledge that he may have had of the pipes and the meter that the explosion was caused by a defect in the meter.

The Court: The objection is sustained and upon request of counsel a bill of exceptions is sealed for the defendants. [4]

Counsel for the defendant propose to show by John Long that of the two regulators belonging to the Bridgewater Gas Company named by him, one of them was out of repair, and had been for at least a year, and out of repair in this particular, that the escape valve intended for the relief of the pressure was completely closed, and made no noise and gave no warning; that this escape valve, as well as the escape valve upon the other regulator, was only an inch and a quarter in diameter and connected with a six-inch line; that thereby when the gas was at a high pressure, the escape valve would not allow the gas to escape as it should be allowed to escape; this to be followed by evidence that the escape valves referred to were not sufficient, and were not the ordinary escape valves in use as to size, being much too small to relieve the lines at any point, and that the escape valves should have been as large as the pipe from which the gas would escape into them.

This for the purpose of showing that the Bridgewater Gas Company was negligent in the maintenance of its lines, and that assuming that Mr. Miller did turn on the by-pass that his employer could not be held liable for anything excepting usual and ordinary results therefrom, and would not be liable for the negligence of the Bridgewater Gas Company, or for any results that could not be reasonably foreseen as flowing from its act.

Counsel for the plaintiff object, first, as incompetent, irrelevant and immaterial; and, second, as being subject to precisely the same objection and ruling as the offers heretofore made by the defendants in this case; as the defendant does not offer to show that the accident was caused by a defective regulator, which was perhaps three eighths of a mile from the house of the plaintiff, and it is therefore incompetent and immaterial.

The Court: The objection is sustained, and upon request of counsel a bill of exceptions is sealed to the defendant. [5]

The court charged in part as follows :

[In considering the question of damages, if you come to such consideration, all the facts must be taken into account. There is no evidence in this case on the part of the plaintiff as to his earning power at the time of the accident, and you must take into consideration that fact, that it is upon the question of earning power that the rule is laid down, that you must base your calculation as to the damages which have been sustained by reason of inability to perform some kind of labor, labor of any kind, and if no rule is given to you, you must determine under all the facts and circumstances of the case, and the conditions that existed prior to the accident, as near as possible what that earning power was. And in determining the question of damages, you must look at that in a reasonable and common sense manner. In determining damages for personal injuries resulting from negligence, you should allow not only for the direct expenses incurred by the plaintiff by reason of the injury, but also for the privation and inconvenience the plaintiff has been subjected to, and the physical and mental pain he has already endured and which he is likely to experience, as well as for the pecuniary loss he has sustained and is likely to sustain during the remainder of his life from his disabled condition. When we speak of pecuniary loss we refer to earning power, what he was able to earn, or likely to be able to earn, and such loss as he might sustain by being unable to continue the exercises of that earning power. The court does not recollect any evidence in this case as to the earning power of the plaintiff, whether his condition in that respect was the same after the accident as it was before, except as to his physical condition before and after the explosion by which the injuries were caused. There is no evidence other than that he was employed, or kept a store prior to the time of the accident, and since that time he has been living with his brother in the city of Pittsburg.] [7]

Verdict and judgment for plaintiff for $7,000. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions ; (7) above instructions, quoting them.

*William B. Rodgers*, with him *Harry Calhoon, Edwin S. Weyand* and *Edwin S. Craig*, for appellant.—The admission of the testimony as to expectancy of life seems to us to be plainer error than that for which the court below was reversed in Kerrigan v. Penna. R. Co., 194 Pa. 98.

When the probable earnings are to be taken into account in fixing the damages, it is the duty of the plaintiff to show the earning power or give such evidence in regard to his business, business habits and past earnings as may afford some basis from which earning capacity may be fairly estimated: Wallace v. Penna. R. Co., 195 Pa. 129; McHugh v. Schlosser, 159 Pa. 480.

*C. F. McKenna*, with him *E. J. McKenna, John M. Buchanan, William A. McConnel* and *J. F. Reed*, for appellee.—Contributory negligence of a third party was involved in the case of McKenna v. Bridgewater Gas Co., 193 Pa. 640. Under practically the identical testimony offered, this court decided that there was no ground on which to charge the Bridgewater Company with negligence contributing to the injury to plaintiff.

The plaintiff in using gas, assumed only the ordinary risk of such use and not those which became extraordinary through the negligence of defendant: Oil City Supply Co. v. Boundy, 122 Pa. 460.

The reference to the tables in the court's charge was accompanied with very careful and elaborate warnings as to the effect to be given them in following the directions and using the language of this court in similar cases, and for this reason the admission of the tables was not within the objection of the court as expressed in Kerrigan v. Penna. R. Co., 194 Pa. 98.

The American mortality tables are admissible in evidence in an action for damages for permanent injuries although death did not result: Kraut v. Frankford, etc., Ry. Co., 60 Pa. 328; Campbell v. City of York, 172 Pa. 205.

Opinion by Mr. Justice Mestrezat, January 7, 1901:

This action was brought by Patrick Henry McKenna against the Citizens Natural Gas Company to recover damages for personal injuries sustained by himself and for the loss of his wife, which the plaintiff alleges were caused by an explosion of natural

gas at his residence in New Brighton, Beaver county, on the night of December 27, 1897. At that time Mr. McKenna was supplied with natural gas for fuel and illuminating purposes by the Bridgewater Gas Company whose mains were laid in the streets of New Brighton. The Citizens Natural Gas Company also had laid its mains in the streets of New Brighton, but they were not connected with the pipes on Mr. McKenna's premises by which the gas was conveyed from the mains of the Bridgewater Gas Company to his residence. Charles T. Miller was an employee and inspector of the defendant company, but he had no connection with the Bridgewater Gas Company. On the morning of December 27, 1897, desiring to force some water out of the defendant company's low pressure line, he by mistake entered a box of the Bridgewater Gas Company and opened the valves of the by-pass contained therein connecting the high and low pressure lines of the latter company. Mr. Miller thought this was the box of the Citizens Natural Gas Company and did not discover his mistake until the following morning. That night at 11 o'clock the explosion occurred at the residence of the plaintiff by which he and his wife were seriously injured and from the effects of which she died a few days afterwards. By Miller's action in opening the valves of the by-pass, the gas in the mains of the Bridgewater Gas Company was freed from the control of the regulator and passed directly from the high to the low pressure line which carried it to the plaintiff's house. This would equalize the pressure in the two lines and cause an excessive pressure on the low pressure line. Owing to a break in the line, the gas was turned off, and there was but little gas in the mains of the Bridgewater Gas Company during the day of December 27. Between 6 and 7 o'clock that evening the gas was turned on again. About 9:30 o'clock there was a pressure of twenty-two and one half pounds on the high pressure line. The low pressure line usually carried about ten or twelve ounces.

The plaintiff alleges that Miller's action in opening the by-pass in the Bridgewater Gas Company's mains while he was in the service and under the direction of the defendant company, was negligence, and caused the explosion in the plaintiff's house which resulted in the injuries to the plaintiff and his wife.

The first and second assignments of error relate to the recep-

tion of the testimony of Samuel Henry offered for the purpose of showing the expectancy of the lives of Patrick Henry McKenna and Mary McKenna, his wife. He testified from a life table in a book entitled "Handy Guide to Premium Rates, Applications and Policies and American Life Insurance Companies." The book was not offered in evidence and all we know of it is what the witness testified to. It contained two mortality tables. In testifying to the expectancy of life, he read from the one designated "Combined Actuaries Experience" table. On what this table is based, or from what material it was constructed, is not disclosed by the evidence. Whether it was founded on selected or insurable lives or upon general population, or upon either, is not shown by the testimony. The character of the table and its value as a basis from which to determine the expectancy of life were not shown. The witness testified that the table was used for ascertaining rates, and that from this table he could calculate the expectancy of life at a given age. The competency of the witness and the weight of his testimony depended entirely upon the value of the table as evidence to establish the expectancy of life. Had the table itself been offered, under the facts disclosed at the trial, it would have been rejected. The witness, therefore, should not have been permitted to testify from it to the expectancy of life of the plaintiff and his wife. The first and second assignments of error are sustained. The admission of such testimony as complained of in these assignments, its value as well as the care with which it should be submitted to the jury, have been fully discussed and determined by our Brother DEAN in the very recent case of Kerrigan v. Penna. R. Co., 194 Pa. 98, and the subject needs no further elaboration at this time.

The third and fourth assignments are not sustained. If the testimony covered by these assignments had been admitted, it would not have convicted the plaintiff of negligence. Without some evidence tending to show that the unsafe condition of the meter and regulator contributed to or was the cause of the explosion, the condition of these appliances was immaterial and irrelevant to the issue, and the testimony offered for the purpose of showing it was properly excluded.

We are at a loss to see how the fifth assignment can be sus-

tained.  Assuming that the Bridgewater Gas Company was negligent in the construction and maintenance of its lines, it does not exculpate the defendant company from its negligence. Where two parties are each guilty of negligence contributing to an injury, the tort of the one is no defense to an action against the other.   In the case at bar, McKenna's house would not have been wrecked notwithstanding the Bridgewater Gas Company's defective appliances, had not Miller opened the valve in the bypass.   Without his negligence, therefore, it is too clear for argument that the plaintiff would not have sustained the injuries for which he sues in this action.

The seventh assignment relates to a part of the charge devoted to the question of damages.  The learned judge in his charge said : " In determining damages for personal injuries resulting from negligence you will allow . . . . for the pecuniary loss he (the plaintiff) has sustained, and is likely to sustain, during the remainder of his life, from his disabled condition. When we speak of pecuniary loss we refer to earning power, what he was able to earn, or likely to be able to earn, and such loss as he might sustain of being unable to continue the exercise of that earning power."   The probable earnings of the plaintiff, therefore, was an element to be considered in determining the damages recoverable in the action.   It was conceded and so stated in the charge, that there was no evidence in the case as to the earning power of the plaintiff before or after the accident.   Yet the court directed the jury to take it into consideration in determining the damages.   This was error.   As the plaintiff asked damages by reason of his diminished earning capacity, it was his duty to introduce testimony from which the jury could ascertain such damages.   Failing in this the learned judge should not have submitted to the jury as a basis for their verdict the pecuniary loss to the plaintiff occasioned by the injuries received in the explosion.   " But it is also true," says Justice WILLIAMS in McHugh v. Schlosser, 159 Pa. 486, " that when the probable earnings of the deceased are to be taken into account in fixing the damages, it is the duty of the plaintiff to show the earning power of the deceased or give such evidence in regard to his business, business habits and past earnings as will afford some basis from which his earning capacity may be fairly estimated."

The first, second and seventh assignments of error are sustained, the judgment is reversed and a venire facias de novo is awarded.