Bell *v.* Dugan, Appellant.

Argued November 18, 1958. Before Rhodes, P. J., Hirt, Gunther, Wright, Ervin, and Watkins, JJ. (Woodside, J., absent).

*Edwin M. Wallover*, with him *Wallover & Barrickman*, for appellant.

*J. Frank Kelker*, for appellee.

Opinion by Ervin, J., April 16, 1959:

This appeal is from the refusal of the court below to grant a motion for judgment n.o.v. filed by defendant, John Dugan, Jr., who was involved in an accident at an intersection. The sole question is whether the plaintiff, Wilbert F. Bell, was guilty of contributory negligence as a matter of law.

On December 8, 1956, at about 9:40 p.m., plaintiff was driving a Chevrolet pick-up truck in a northerly direction on State Highway Route 51, also known as Brodhead Road, in the Borough of Aliquippa. Defendant was driving a Buick sedan in a westerly direction on Admiral Street in the same borough. State Highway Route 51 is a main thoroughfare and Admiral Street intersects this main thoroughfare from

324

the east but does not extend to the west. There were no stop signs or. traffic signals at the intersection. Shortly before the accident defendant had traveled northwardly along this main thoroughfare and when he reached Admiral Street he turned right. He drove some distance on Admiral Street, turned his vehicle around and proceeded back toward the intersection. He testified that he was traveling on Admiral Street at 15 miles an hour. Not being aware that he had reached the intersection, he drove into it immediately in front of plaintiff's vehicle, which he did not see until the time of impact. He also testified that he would have stopped had he known he had reached Route 51.

Plaintiff was traveling toward the intersection of Admiral Street at a speed of between 25 and 30 miles per hour in a posted 35 miles per hour zone. When approximately 90 feet from the intersection he noticed defendant on Admiral Street approximately 50 feet from the intersection. Plaintiff took his foot off the gas when he was between 40 and 50 feet from the intersection. He testified that it "looked like he was coming up to stop." When, however, plaintiff realized defendant was not stopping it was too late to avoid the collision and he collided with the left side of defendant's vehicle, causing both personal injury to himself and property damage to his truck. At the end of the charge, which adequately covered the issues and which was free from error, defendant's counsel, upon being asked by the court for "comment," made none and took no exceptions. Having presented a point for binding instructions, which was refused, defendant's counsel filed a motion for judgment n.o.v.

Defendant relies principally upon §1013 of The Vehicle Code of 1929, P. L. 905, as amended, 75 PS §572-(a), which provides: "When two vehicles . . . approach or enter . . . an intersection at approximately the same

time, the driver . . . on the left, shall yield the right of way. . . ."

Contributory negligence should be declared as a matter of law only when it is so clearly revealed that fair and reasonable persons could not disagree as to its existence: *McMillan v. Mor Heat Oil & Equipment Co., Inc.,* 174 Pa. Superior Ct. 308, 311, 101 A. 2d 413.

The defendant also relies heavily upon the case of *Rosato v. LaMent,* 346 Pa. 360, 30 A. 2d 698. In that case, when the plaintiff reached the north curb line he saw defendant's car about 65 feet away, approaching "very fast."

In *Gourley v. Boyle,* 346 Pa. 113, 29 A. 2d 523, plaintiff saw defendant's car about 75 feet or 100 feet away, approaching "round forty or forty-five miles an hour," which defendant increased to 55 to 60 miles per hour.

In *Stevens v. Allcutt,* 320 Pa. 585, 184 A. 85, the plaintiff did not see the defendant's truck until it struck him because he was not looking.

In *Toyer v. Hilleman,* 320 Pa. 417, 183 A. 53, the defendant was approaching the intersection at great speed and the Court said: "In analogous circumstances we have held that the driver who commits himself to a crossing at an intersection in the face of a rapidly approaching vehicle thereby tests an obvious danger. . . ."

In *Haney v. Woolford,* 124 Pa. Superior Ct. 208, 188 A. 405, when plaintiff was about 15 feet from the intersection and had reduced his speed to 12 or 15 miles an hour, he saw defendant's automobile 140 to 150 feet away approaching the intersection at 50 to 60 miles per hour.

In *McMillan v. Mor Heat Oil & Equipment Co., Inc.,* supra, when the plaintiff had reached the north curb line he first saw the lights of the defendant's

truck 75 feet away, coming at a speed of 30 or 35 miles an hour.

In each case we must take into consideration all of the facts and circumstances, such as the speed of plaintiff's car, his ability to stop in a short distance, the rapid approach of the defendant's car and the distance to be traveled before the paths of the two would intersect. If these facts and circumstances are such that a reasonable person would know that he is testing an obvious danger to go forward when he could have stopped and avoided injury, then the court should declare the plaintiff contributorily negligent as a matter of law. Where, however, the facts and circumstances are such that a reasonable person would properly conclude that he could cross the intersection safely without testing an obvious danger, the court should not be permitted to declare the plaintiff contributorily negligent. Where the facts and circumstances fall within the gray area between these two extremes, the question is one for the jury's determination. This case falls within the last category. The plaintiff, while traveling 25 to 35 miles an hour and being 90 feet from the intersection, saw the defendant 50 feet therefrom, traveling at 15 miles per hour, and he testified that it "looked like he was coming up to stop." Defendant testified that he would have stopped had he known he was at the intersection. Would a reasonable person traveling on a main thoroughfare, as above described, have a right to conclude that the defendant was going to stop and permit him to pass through the intersection? This we believe, under all the facts and circumstances in this case, was a proper question for the jury. The defendant was not obliged to stop if he reached the intersection at approximately the same time as the plaintiff because, being on the right, he would normally have the right of way: §1013

of The Vehicle Code of 1929, as amended, 75 PS §572-(a),[1] but if the defendant, traveling at a very slow rate of speed, gave the impression that he was stopping his car, the plaintiff could not be declared contributorily negligent as a matter of law if he relied upon the facts present in this case.

Judgment affirmed.

---

CONCURRING OPINION BY GUNTHER, J.:

Although I agree with the conclusion reached by the majority because the questions of negligence and contributory negligence involved in this case were properly left for the determination of the jury, I am obliged to concur rather than approve the majority opinion because of certain conclusions arrived at which, in my view, are unwarranted.

While there was no stop sign erected on Admiral Street, it was conceded that Brodhead Road was a main through highway and the plaintiff had the right to assume, under normal circumstances, that he had the right of way. He had the right to assume that the operator of a vehicle on a side road would stop until traffic had cleared the intersection. As a matter of fact, defendant stated that if he had known he had reached Route 51, he would have stopped before entering said highway and stated, further, that he would normally have stopped before entering it. The testi-

---

[1] The only way a through highway and a stop intersection can be made is by the erection of proper signs by the proper authorities: 75 PS §712. Section 573(a) of the Code is not applicable to this situation because Admiral Street was a public highway and not a private road or drive. Section 573(c) of the Code could not apply because the driver on Admiral Street was not entering a through highway or stop intersection "established as such under provisions of this Act."

mony disclosed that when it became apparent that defendant was not going to stop at the intersection, he "went for the brakes." Faced with this sudden emergency, he attempted to stop his vehicle. As stated by the Supreme Court in the case of *Casey v. Siciliano*, 310 Pa. 238, 242, 165 A. 1, 2: "When the driver of an automobile claims that he has been subjected to a sudden emergency in driving on the highways, to enable him to claim the benefit of this rule, it must appear that he was not driving in a reckless or careless manner, but with due regard to the condition of the highway and the traffic."

Section 1112, subsections (a) and (b) of The Vehicle Code, 75 P.S. 712, are cited dealing with the establishment of stop signs at intersections and the authority of the Secretary of Highways and local authorities to designate through highways. The majority concludes that the *only way* a through highway and a stop intersection can be made is by the erection of proper signs. The difficulty with this conclusion, as I view it, is that the respective authorities are not absolutely required to so designate and erect signs. Such stop signs, even if erected, are visible only to the vehicle traveling on the intersecting street. The failure to erect such signs would not necessarily eliminate the obvious fact that State Highway 51 was and is a through highway. To hold that the failure to erect a stop sign at the intersection eliminates from consideration that State Highway 51 is a through highway is not realistic and imposes on the authorities a mandatory duty which cannot be found in The Vehicle Code. There are many roads, streets and ways intersecting main traffic arteries of this Commonwealth which do not have stop signs erected on them or designating such main artery as a through highway. For example, no one would deny the fact that U. S. High-

way 30 is a through highway. However, if the many side roads and ways intersecting said highway have no stop signs erected, the character of such highway is destroyed. I cannot agree with such a conclusion. Until the legislature sees fit to make the erection of stop signs mandatory before a highway may be classified as a through highway, we should not require that which is permissive to be mandatory.