Pasqualucci, Appellant, *v.* Kronz.

Argued April 10, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, and FLOOD, JJ. (RHODES, P. J., and MONTGOMERY, J., absent).

*Nick C. King,* with him *Vincent R. Massock,* for appellants.

*Kim Darragh,* with him *Meyer, Darragh, Buckler & Bebenek,* for appellees.

OPINION BY WRIGHT, J., June 15, 1961:

In the late afternoon of April 17, 1956, Alfredo Pasqualucci was operating a Cadillac two-door sedan in a line of traffic proceeding north on Washington Road, Mt. Lebanon Township, Allegheny County. Seated on the front seat with him were his wife, Columbia, and his sister, Jenny. The first vehicle following the Cadillac was a panel truck. Behind the panel truck was a dump truck owned by Raymond J. Kronz and operated by his son and employe, Donald Kronz. The Pasqualucci car stopped for a red traffic light near the intersection of Crestwood Avenue. The dump truck did not stop in time, collided with the panel truck, and drove it into the rear of the Cadillac.

As a result of this collision, two trespass actions were instituted in the Court of Common Pleas of Allegheny County at January Term 1958. The defendants admitted liability and the case was contested solely on the issue of the extent of the injuries to the Pasqualuccis and the amount of their damages. After a three-day trial the jury returned a verdict at No. 1294 in favor of Alfredo Pasqualucci in the amount of $560.00, and in favor of Columbia Pasqualucci in the amount of $800.00. At No. 1295 the jury returned a verdict in favor of Jenny Pasqualucci in the amount

of $1,900.00. The court en banc refused plaintiffs' motions for a new trial and directed that judgments be entered on the verdicts. These appeals followed.

At the time of the trial, April, 1960, Alfredo Pasqualucci was fifty-one years of age. His wife, Columbia, was forty-seven, and his sister, Jenny, was forty-two. Immediately after the accident appellants were taken to the St. Clair Memorial Hospital, examined by a doctor, and discharged. On April 20, 1956, appellants consulted Dr. Benjamin Super, their family physician. Dr. Super made a physical examination of each, and suggested to Alfredo and Jenny that they should have x-rays taken. Alfredo's x-rays did not disclose any bone injury, but did reveal some arthritis of the spine. Jenny's x-rays showed no abnormality in the curvature or alignment of the vertebrae, and gave no indication of anything which could be related to recent trauma. Dr. Super saw Alfredo and Columbia at weekly intervals for about a month, but did not render any treatment. He did advise Jenny to wear a turkish towel collar.

On May 25, 1956, Alfredo consulted Dr. Paul B. Steele, an orthopedic surgeon. Further x-rays were taken. On the basis of his examination, Dr. Steele concluded that there was a marked arthritic condition of the spine which had been aggravated by the accident. He testified that it was normal for the aggravation of such an arthritic condition to wear off after a period of time. Dr. Steele prescribed a brace or corset to support the lumbar region of the back and prevent side movement. On September 12, 1957, seventeen months after the accident, Alfredo complained of discomfort in his neck, and at that time Dr. Steele prescribed a collar for him to wear. In April, 1958, Alfredo claimed that he had an acute attack of back pain, which he attributed to the accident. On this occasion, Dr. Steele placed him in the Allegheny General Hospital. Dr.

Steele conceded that this particular aggravation could have occurred regardless of the accident. Alfredo denied that he had ever had any back trouble prior to the accident. However, the records of the Vesta Coal Company, for which concern he had worked as a miner until 1948, were introduced to show that in 1939 he had been off work for one week because of a sprained back, and that in 1944 he was off work for two months with lumbago. In March, 1956, Alfredo was treated by Dr. Super for a kidney stone condition, which required hospitalization.

In 1948, Alfredo quit mining and went into the tavern business. During 1955 and the first few months of 1956, he and Columbia had been operating the New York Cafe in Washington, Pennsylvania. A short time before the accident they sold this business, and were awaiting the transfer of the liquor license to a new location, known as Garner's Tavern, also in Washington. It was opened on May 25, 1956, five weeks after the accident, and was still being operated by Alfredo and Columbia at the time of the trial. Their daily routine at that time was the same as when they started the tavern business. Columbia would open up in the morning and Alfredo would take over sometime later in the day and stay until closing time. The books and records of Garner's Tavern were produced in court and showed that, in the last seven months of 1956, Garner's Tavern did almost as much business as had been done in the whole year of 1955 at appellants' previous location, New York Cafe. In 1957, it did the largest business that the parties had ever done since they had been engaged in tavern operations. Claim was made that it was necessary to hire additional help because of the inability of Alfredo and Columbia, due to the accident, to perform many of the duties which they had previously done. However, the records showed that the payroll for waitresses, bartenders, janitor service et cetera

at Garner's Tavern was the same as it had been at the New York Cafe, before the accident.

With regard to Columbia Pasqualucci, Dr. Steele testified that he first examined her on June 28, 1956, at which time he found the motions in her neck to be fairly good in all directions. He stated that she manifested a tear in the ligamentum nucci but that this condition healed up with no danger of any recurrence. He prescribed a collar for Columbia, which she wore off and on for about a year.

Jenny Pasqualucci consulted Dr. Steele on May 25, 1956. He also prescribed a collar for her. At the time of the accident she was employed as a seamstress and presser for a cleaning firm, earning approximately $20.00 a week. She never returned to this employment. In May, 1957, she was admitted to the Washington Hospital for a duodenal ulcer and gastritis. She testified that she did not know whether she would have been able to work despite this condition. In March, 1958, she was injured in another automobile accident in which it was claimed that she had aggravated a prior injury to her neck. She was married on November 15, 1958.

On behalf of the defendants, Dr. George E. Clapp gave each of the appellants a general physical examination in February, 1957. It was his opinion that there was no disability in any of the three individuals, as of the date of his examination, which would prevent them from performing their customary duties. Dr. Cyrus P. Markle, a specialist in orthopedics and senior surgeon at the West Penn Hospital, also examined Alfredo and Jenny for the defendants on March 30, 1960. At that time he had x-rays taken. At the trial, Dr. Markle compared these x-rays with those taken for Dr. Steele in May, 1956. Dr. Markle testified that in his opinion there was no substantial change in the appearance of the bony structure in the four-year interval.

We feel that a portion of Dr. Markle's report, elicited on cross-examination, had significance for the jury. His comment was as follows: "I feel that this patient [Alfredo] is claim minded and that he most likely received no disability as a result of his alleged accident on April 17th, 1956. This patient was a miner for 30 years and it is not unusual to have some back symptoms following such an occupation. This patient at this time is not disabled and could pursue any type of occupation so desired . . . I feel that this patient has symptoms and complaints, that they are due to natural causes rather than any injury sustained as a result of his accident on April 17, 1956".

Alfredo asserted special damages in total sum of $765.62. Of this amount, $510.00 was paid to Dr. Steele for treatments over a period from May, 1956 to February, 1960. There was also an item of $175.00 for hospitalization in the Allegheny General Hospital. Dr. Super's bill was $25.00, and the balance included x-rays et cetera. The out-of-pocket expenses for Columbia were claimed to be $281.00. Of this amount, Dr. Steele's bill for treatments from June, 1956 to June, 1959, was $235.00. Dr. Super's bill was $25.00, the x-rays were $15.00, and the neck collar $6.00. Jenny Pasqualucci asserted special damages in total amount of $2,615.25. Dr. Steele charged $255.00 for treatment from May, 1956 to July, 1958. Dr. Super's bill was $25.00, and the x-rays et cetera amounted to $35.25. The large item in Jenny's claim was lost wages asserted to be for a period of 115 weeks at $20.00 a week. This covered the period from the date of the collision to July, 1958, during which time she had undergone hospitalization because of her ulcer, and had been involved in a second accident.

No complaint is made with regard to the conduct of the trial or the charge of the court. Appellants' sole contention is that the verdicts were inadequate. Their

argument is based primarily on *Todd v. Bercini,* 371 Pa. 605, 92 A. 2d 538, wherein the award of a new trial by the lower court was affirmed on appeal to the Supreme Court. It is appellants' position that the instant verdicts should shock the conscience of the court, and that they bear no resemblance to the damages allegedly proved. , Relying on the language in the *Todd* case, appellants argue that if they were entitled to verdicts "because of the injuries inflicted on them, as a result of the defendants' negligence, they are entitled to all that the law provides in such a case and to award them less is a great miscarriage of justice". Unfortunately for appellants' contention, the court en banc was not "shocked" by the verdicts. To the contrary and with good reason, it was of the opinion that "the jury was not impressed with the testimony relative to injuries and concluded that the injuries were not as serious as the parties contended or completely due to the accident".

In *Gottlob v. Hillegas,* 195 Pa. Superior Ct. 453, 171 A. 2d 868, we recently had occasion to review our function in cases involving appeals from the refusal of the trial court to grant a new trial. It was summarized many years ago by President Judge RICE in *Palmer v. Leader Publishing Co.,* 7 Pa. Superior Ct. 594, as follows: "No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages". This principle has been consistently followed in both this court and the Supreme Court. See *Simpkins v. Richey,* 192 Pa. Superior Ct. 46, 159 A. 2d 17; *McCluskey v. Poloha,* 194 Pa. Superior Ct. 286, 166 A. 2d 334; *Carpenelli v. Scranton Bus Co.,* 350 Pa. 184,

38 A. 2d 44; *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A. 2d 816; *Edelson v. Ochroch,* 380 Pa. 426, 111 A. 2d 455.

The question of the extent of appellants' injuries was a factual matter for the jury's determination: *Kirby v. Carlisle,* 178 Pa. Superior Ct. 389, 116 A. 2d 220. The credibility of the witnesses lies strictly within the sole province of the jury: *Pryor v. Graff,* 179 Pa. Superior Ct. 622, 117 A. 2d 818. It was for the jury to appraise the testimony and to accept or reject the estimates given by the witnesses: *Hollins v. Pittsburgh Rwys. Co.,* 188 Pa. Superior Ct. 141, 146 A. 2d 622. See also *Exner v. Safeco Insurance Co.,* 402 Pa. 473, 167 A. 2d 703. So long as the verdicts bear a reasonable resemblance to the damages proved, it is not our function to substitute our judgment for that of the jury: *Perzak v. Coulter,* 171 Pa. Superior Ct. 475, 90 A. 2d 256; *Elza v. Chovan,* 396 Pa. 112, 152 A. 2d 220. Cf. *Zamojc v. Fisher,* 127 Pa. Superior Ct. 171, 193 A. 315.

In the case at bar the evidence on behalf of Alfredo's claim was far from satisfactory. His testimony was contradictory and portions thereof were rendered questionable by the subsequent testimony of his wife. The report of Dr. Markle seriously undermined Alfredo's entire case. There was ample warrant for the jury to return a verdict which they felt would reimburse Alfredo for the actual loss which might fairly be attributed to the accident, and to divorce from his claim those items occasioned by the pre-existing arthritic condition. See *Patterson v. Pittsburgh Rwys. Co.,* 136 Pa. Superior Ct. 432, 7 A. 2d 478. It was obvious that Columbia suffered little, if any, actual disability. So far as Jenny is concerned, the jury was faced with a claim for lost wages covering a period in excess of two years. It is apparent from the verdict that the bona fides of this claim was questioned. Her intervening hospitalization and second accident could

well have caused the jury to hesitate in allowing the full amount.

In conclusion, we repeat the pertinent statement of Justice, now Chief Justice, JONES in *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86: "Of course by comparing the amount of the verdict with the extent of damages which the plaintiff asserted, the verdict would appear not to have been compensatory. The fact is, however, that there were serious conflicts in the evidence adduced by the plaintiff with respect to the character of the work he had performed prior to the accident, the effect of the injury on his ability to return to work and the probable duration of his incapacity". It is our view in the instant case that the court en banc did not abuse its discretion in refusing to grant a new trial.

Judgments affirmed.