Gottlob et ux., Appellants, *v.* Hillegas.

454

Argued March 22, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Norman Shigon,* for appellants.

*James J. McEldrew,* with him *Elston C. Cole,* for appellee.

Opinion by Wright, J., June 15, 1961:

On December 1, 1957, a collision occurred between a motor vehicle in which Estelle Gottlob was a passenger, and a motor vehicle owned by John W. Hillegas and operated by his son, Richard Hillegas. Mrs. Gottlob and her husband, Milton, instituted suit in trespass in Court of Common Pleas No. 4 of Philadelphia County against John W. and Richard Hillegas. The trial took place before Judge Reimel in Court of Common Pleas No. 5, and resulted in a verdict against Richard Hillegas[1] in the sum of $100.00 for each plaintiff. The court en banc dismissed plaintiffs' motion for a new trial, and judgment was entered on the verdict. These appeals followed.

The collision occurred on Baltimore Avenue near Fifty-Second Street in the City of Philadelphia. The vehicle in which Estelle Gottlob was a passenger was part of a funeral procession, and had stopped for a red light. It was struck from the rear by the Hillegas car. Appellee offered no testimony, as liability was in effect conceded. Mrs. Gottlob's theory was that a consequence of the collision was a serious heart condition. She offered medical bills in total amount of $5,518.59. The pivotal question was whether the injury of which Mrs. Gottlob complained resulted from the accident. That issue was submitted to the jury in a thorough and impartial charge concerning which no serious objection is made.

Appellants' principal contentions are that the verdicts were (a) inadequate, and (b) arbitrary and ca-

---

[1] With the assent of counsel for plaintiffs, the trial judge directed the jury to return a verdict in favor of John W. Hillegas.

pricious. In this connection we quote with approval the following excerpt from the opinion of President Judge ALESSANDRONI speaking for the court en banc:

"Upon first impression this is a classic illustration of a jury being misled by bias, prejudice, or one of a number of other reasons. If the medical expenses required by the injuries were in excess of $5,000.00, the verdicts would indeed be shocking and would demand the granting of a new trial to correct the miscarriage of justice. Indeed if such were the situation there can be little doubt but what the trial judge would have granted a new trial *sua sponte*. Compare Elza v. Chovan, 396 Pa 112.

"First impressions being what they are, the failure of the trial judge to act when the verdicts were received indicates that all is not as it appears. The record presented a serious issue for the jury's determination: were the injuries, which required the expenditure of more than $5,000.00 in medical expenses, a consequence of the accident. If this vital connection is not established by the record then the verdicts are justified. The finding of the jury as established by its verdict is supported by the record and plaintiffs' proof of causal connection was not sufficient to convince the jury".

The foregoing excerpt indicates that the court was fully cognizant of the importance of the issue, and that the dismissal of the motion for a new trial was the result of a thorough and fair review of the record. In *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A. 2d 816, quoting from *Coleman v. Pittsburgh Coal Co.*, 158 Pa. Superior Ct. 81, 43 A. 2d 540, Mr. Justice ARNOLD said: "The guide for determining whether a new trial should be granted for inadequacy of verdict has often been set forth in the cases. 'Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a

gross abuse of discretion . . . When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action' ". The function of determining whether a jury's verdict is arbitrary and capricious is within the province of the trial court, and its decision will not be set aside in the absence of clear error of law or palpable abuse of discretion: *Wilbert v. Pittsburgh Consolidation Coal Co.,* 385 Pa. 149, 122 A. 2d 406. We are justified in declaring the lower court guilty of such an abuse of discretion only if we are clearly convinced by the record that the jury was influenced by partiality, passion, prejudice or some misconception of the law or the evidence: *Carpenelli v. Scranton Bus Co.,* 350 Pa. 184, 38 A. 2d 44; *Simpkins v. Richey,* 192 Pa. Superior Ct. 46, 159 A. 2d 17; *McCluskey v. Poloha,* 194 Pa. Superior Ct. 286, 116 A. 2d 334.

In the instant case we are not concerned with a compromise verdict. The issue, as already indicated, resolved itself into whether Mrs. Gottlob's heart condition was a consequence of the accident. The question of the extent of her injuries was for the determination of the jury. See *Stevens v. Frank,* 151 Pa. Superior Ct. 222, 30 A. 2d 161. Appellants concede that the verdicts were more than nominal. The court en banc was satisfied that they were warranted by the evidence. We have carefully examined this voluminous original record and do not find any abuse of discretion in the refusal to grant a new trial. Appellants have failed to show that the jury was swayed by partiality, passion or prejudice, and have not pointed out any misconception of the law or the evidence.

Counsel for appellants has cited a number of cases, none of which govern the instant factual situation. In *Daccorso v. George F. Otto Corp.,* 397 Pa. 328, 155 A. 2d 199, the lower court granted a new trial because it found the verdict to be "shocking and absurd", and our

Supreme Court affirmed. This decision is not controlling in the case at bar where the court en banc specifically rejected such a description of the verdict. Similarly, *Krusinski v. Chioda,* 394 Pa. 90, 145 A. 2d 681; *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344, and *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295, involved appeals from the grant of a new trial by the court below. In the case at bar the court en banc took the position, and properly so, that the jurors were not required to adopt appellants' theory as to causal connection. Some of the questionable features of the testimony adduced by appellants are thus summarized in the opinion below:

"The record discloses that about three weeks after the accident Mrs. Gottlob was examined by Dr. Digilio; she gave a history of attacks of heart palpitation, but stated that for about a year prior to the accident she was free of such symptoms. Dr. Digilio examined her, and had some tests performed; he concluded that she had a heart condition which was of recent traumatic origin. Despite this diagnosis she was examined but once by him; Dr. Digilio did not treat Mrs. Gottlob for the alleged heart condition.

"In May, 1958 Mrs. Gottlob was admitted to a hospital in the service of Dr. Bellett; at that time she gave a history of pain in the precordial area; she stated that the pain had persisted for about one year. This period obviously includes the accident of December, 1957, and dates the existence of the precordial condition at least to May, 1957.

"Other inconsistencies appear in the histories given by Mrs. Gottlob at subsequent hospital admissions. Her chief complaint when she entered the hospital in May, 1958 was the precordial pain which had been present from about May, 1957. She barely mentioned the auto accident . . .

"Dr. Rubin, plaintiff's family physician, treated her ten times in three weeks immediately after the accident. Plaintiffs made no attempt to call him, nor to explain his absence. The inference was not lost on the jury. His report about her condition was used in the examination of Dr. Digilio by defendant. The report failed to mention a heart condition.

"Estelle Gottlob's testimony was contradicted in a number of minor details, which, had each been standing alone, might have been of small consequence, but cumulatively the effect on the jury was devastating. She denied being referred to Dr. Digilio and Dr. Bellett by her attorney; the doctors testified that she was in fact referred to them by counsel. Her testimony about her position in the automobile was contradicted; her decision to conceal the reference to the doctors could have been taken by the jury to mean that Mrs. Gottlob felt that the truth would reflect on the bona fides of her claim. This was the inference which the jury must have drawn; plaintiff cannot now complain because the inference is logical and particularly since it is based on her own testimony".

Where the record reveals a tenuous and strained connection between the trauma of the accident and the injuries claimed, and where the record further reveals that the plaintiff omitted essential facts in discussing her physical well being with the doctors, the accuracy and very foundation of the opinions expressed by the doctors become open to serious question: *Smith v. L. Blumberg's Son, Inc.*, 388 Pa. 146, 130 A. 2d 437.

The credibility of witnesses is always a matter for the jury: *Exner v. Safeco Insurance Co.*, 402 Pa. 473, 167 A. 2d 703. And this is so even though a plaintiff makes out a prima facie case on the testimony of witnesses who are uncontradicted and unimpeached: *Nanty-Glo Boro. v. Amer. Surety Co.*, 309 Pa. 236, 163 A. 523. It is the province of the jury to appraise the tes-

timony and to accept or reject the estimates given by the witnesses: *Hollins v. Pittsburgh Rwys. Co.*, 188 Pa. Superior Ct. 141, 146 A. 2d 622. In the words of Judge WOODSIDE in *Kirby v. Carlisle*, 178 Pa. Superior Ct. 389, 116 A. 2d 220: "If the courts were to hold that a jury must believe the testimony of a plaintiff and his witnesses concerning injuries there would be no way for a defendant to protect himself against fraudulent claims for injuries which never occurred". Similarly, in *Karcesky v. Laria*, 382 Pa. 227, 114 A. 2d 150, Mr. Justice BELL said: "Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his witnesses say, even though their testimony is uncontradicted".

We find no merit in appellants' remaining contentions, and will dispose of them briefly. It is argued that appellee's counsel made an improper remark to the jury in his closing address. No motion was made to withdraw a juror. When objection was taken to the remark, the trial judge stated: "Let it be noted that the remark made was somewhat similar to the remark made by counsel for the plaintiff. I will give the jury proper instructions with reference to that". In this connection Judge REIMEL instructed the jurors to "base your verdict upon the evidence alone, without sympathy for or prejudice against either party". We perceive no prejudice to appellants, or abuse of discretion. The propriety of counsel's argument and remarks to the jury is generally to be determined by the trial court: *Nalevanko v. Marie*, 328 Pa. 586, 195 A. 49. See also *McClintock v. Pittsburgh Rwys. Co.*, 371 Pa. 540, 92 A. 2d 185; *Vereb v. Markowitz*, 379 Pa. 344, 108 A. 2d 774; *Wilbert v. Pittsburgh Consolidation Coal Co.*, supra, 385 Pa. 149, 122 A. 2d 406; *Linsenmeyer v. Straits*, 402 Pa. 7, 166 A. 2d 18; *Maxwell v. Castiello*, 130 Pa. Superior Ct. 390, 197 A. 536.

Appellants also contend that the trial court erred in refusing to admit the testimony of Dr. Samuel Lisker, an expert in peripheral vascular disease, who treated Mrs. Gottlob for blood clots in the legs. During his direct examination Dr. Lisker stated: "I am not qualified to talk about the heart itself". His testimony with regard to causal connection was therefore stricken. We perceive no error in rejecting the testimony of a witness who candidly admitted his lack of qualification to give an opinion on the pivotal issue in the case.

Appellants further argue that testimony should have been admitted as to Mrs. Gottlob's earning power. There was no attempt to show any past earnings, or that Mrs. Gottlob had ever had gainful employment, nor was there any indication that she would be employed in the future. While the record contained evidence as to her inability to pursue normal household activities, the trial judge did instruct the jury with regard to the husband's loss of his wife's services. We believe that, under the particular circumstances, this was as far as the court could go. See *McKenna v. Gas Co.*, 198 Pa. 31, 47 A. 990; *Beck v. Balt. & Ohio R. R. Co.*, 233 Pa. 344, 82 A. 466; *Zimmerman v. Weinroth*, 272 Pa. 537, 116 A. 510. Appellants cite *King v. Thompson*, 87 Pa. 365, and *Standen v. Pa. Railroad Co.*, 214 Pa. 189, 63 A. 467, but in both of those cases the wife had been gainfully employed.

Appellants finally complain that the trial judge erred in refusing to admit into evidence the United States Life Tables. The record clearly discloses that no sufficient basis had been laid for the introduction of this type of evidence. While mortality tables are admissible under proper conditions, *Rosche v. McCoy*, 397 Pa. 615, 156 A. 2d 307, we perceive no error in their rejection under the circumstances of the instant case.

Judgment affirmed.