## Lesoon, Appellant, *v.* Yellow Cab Company of Pittsburgh.

Argued April 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Stanley W. Greenfield,* with him *George S. Goldstein,* for appellant.

*David J. Armstrong,* with him *Dickie, McCamey, Chilcote & Robinson,* for defendant, appellee.

*Carl W. Brueck,* with him *Carl W. Brueck, Jr.,* for additional defendant, appellee.

OPINION BY WRIGHT, J., June 15, 1961:

In the early evening of January 22, 1957, Louise Lesoon was a passenger in a taxicab of the Yellow Cab Company of Pittsburgh, hereinafter referred to as the Company. The operator of the cab was Darwin Wallace. At the intersection of Monitor Street and Beechwood Boulevard in the City of Pittsburgh, there was a collision between the cab and an automobile operated by Edward W. Bell. Mrs. Lesoon instituted a trespass action against the Company, which joined Bell as additional defendant. Following a four-day trial, the jury returned a verdict in favor of Bell, and a verdict in favor of the plaintiff against the Company in the amount of $55.00. Plaintiff filed a motion for a new trial and the Company filed a motion for judgment n.o.v., both of which motions were refused by the court en banc. Two judgments were thereafter entered, one on the verdict against the Company in favor of plaintiff in the sum of $55.00, and one on the verdict in favor of Bell and against the Company. Plaintiff has appealed.

At the time of the collision, appellant was thirty-nine years of age and was employed as the manager of a dress shop in East Liberty. She had boarded the cab at Penn and Highland Avenues, intending to go to a church in Homestead. Beechwood Boulevard is a through street running generally north and south. Monitor Street runs generally east and west. Bell was

proceeding north on Beechwood Boulevard. Wallace was proceeding west on Monitor Street, intending to make a left turn. The only eyewitnesses to the collision were appellant, Wallace and Bell. Appellant testified that the taxicab did not stop at the intersection but pulled out into the northbound traffic lanes of Beechwood Boulevard and then stopped. She further testified that she told Wallace he was blocking traffic and requested him to move forward or back, but that he failed to do either. Wallace testified that he had plenty of time to cross the intersection ahead of Bell, but heard appellant scream and jammed on his brakes. Bell testified that he was traveling at a speed of fifteen to twenty miles per hour; that the cab was "slowing up like it was going to stop", but came out of Monitor Street without stopping; cut sharply to the south; and "sideswiped my driver's side". Following the collision, representatives of the Company took appellant to the Homestead Hospital where she was examined and released without treatment of any kind. After seeing her brother-in-law, Dr. Shakir T. Ilyas, she went to church, as was her original intention.

On this appeal, appellant advances two contentions, the second of which will be first disposed of because it merits only brief consideration. It is argued that Bell "was clearly guilty of negligence", and that the verdict in his favor was against the law and the evidence. Appellant's position is that Bell's testimony established that he did not yield the right-of-way, as required by Section 1013 of The Vehicle Code.[1] However, our review of the record indicates that this was a matter for the jury. See *Bell v. Dugan,* 189 Pa. Superior Ct. 322, 150 A. 2d 553. It should be noted that

---

[1] In effect at the time of the collision was Section 1013 of the Act of May 1, 1929, P. L. 905, 75 P.S. 572, since revised without pertinent change by Section 1013 of the Act of April 29, 1959, P. L. 58, 75 P.S. 1013.

appellant asserted in her complaint that her injuries were due solely to the Company's negligence. Bell was brought into the case by the Company on the basis of an averment that he was either solely or jointly liable. The jury determined this issue adversely to the Company's contention, and the Company has not appealed from the judgment against it in favor of Bell.

Appellant's primary and principal contention is that the verdict is inadequate. The position of the Company at the trial, and on this appeal, is that appellant was actually not injured in the collision. This pivotal issue was submitted to the jury by the trial judge in a thorough and impartial charge concerning which no complaint is made. The court en banc carefully reviewed the testimony "in order to determine whether or not reasonable minds could logically come to the conclusion that the plaintiff was not injured in the accident", and concluded that the verdict of the jury was not against the weight of the evidence or shocking to the judicial conscience. We have also carefully reviewed this voluminous original record and agree with the court below that the verdict of the jury was fully justified under the testimony.

The photographs admitted as exhibits indicate that the collision was of minor consequence. Neither Bell nor Wallace was injured. Mrs. Lesoon was sitting on the auxiliary rear seat on the left side. She testified that she was thrown out of the cab, but this was denied by Wallace who stated that Mrs. Lesoon did not leave her seat until after the accident; that she then opened the door on the right-hand side of the cab and stepped out into the street. Mrs. Lesoon finally admitted on cross-examination that she did not actually know whether or not she was thrown from the cab. The day after the collision Mrs. Lesoon returned to the Homestead Hospital for x-rays, which proved to be negative. She then went back to work. The charge

of the Homestead Hospital for the initial examination and the x-rays was $55.00, and this bill was specifically mentioned in the verdict of the jury as the basis for its award. On the question of damages, Mrs. Lesoon testified at considerable length. She complained of pain in her neck and shoulder and particularly of pressure in her head. She stated that she was very nervous and fearful and could not do her work properly. Robert V. Klein, her employer, testified that appellant was irritable and that her work record was not as good as previously, although her salary was not reduced. Appellant's condition following the collision was also described by Afeefy Kohrey, her sister and receptionist for Dr. Ilyas, and by Maude Christenson, a domestic servant.

The medical testimony adduced on behalf of appellant was not convincing and actually contradictory in certain respects. Dr. Ilyas testified that appellant had suffered a brain concussion, and his eventual diagnosis also included a whiplash injury to the neck with resulting neurasthenia. He gave his sister-in-law some eighty diathermy treatments, but presented no bill because of the family relationship. Dr. Bernard Johnston, a neurological and neurosurgical examiner, who examined appellant on one occasion, February 20, 1957, testified that there was limitation in motion of the neck, with tenderness at the sixth cervical vertebrae. He also stated that the x-rays taken at the Homestead Hospital indicated injuries to appellant's neck and back. This statement was in conflict with the testimony of appellant's other medical witnesses, who all agreed that the x-rays disclosed no injuries. Dr. D. I. Jamison, Jr., a specialist in neuro-psychiatry, testified that he examined appellant on one occasion, March 24, 1959, and that she had a post traumatic neurosis. He indicated that appellant was a neurotic, a term which Dr. Ilyas refused to employ. Dr. M. S. DeRoy treated

appellant from March 10, 1959 to May 26, 1959. He found no evidence of fracture, but diagnosed her condition as a sprain of the spine.

For the Company, Dr. Herbert Uram testified that he examined appellant on March 19, 1957, that she was tense and apprehensive, but that he found no evidence of abnormality, no disease of the nerves, and no organic cause for her complaints. He made the following pertinent statement: "I do not feel that she has suffered any actual physical disability as the result of this accident". Dr. Wilbert S. Mellon, Jr., a diagnostic roentgenologist, also testified for the Company. His x-rays taken on April 10, 1957, disclosed no abnormality. Dr. Mellon examined and testified with regard to the x-rays taken at the Homestead Hospital on January 23, 1957. As was the court en banc, and obviously also the jury, we were greatly impressed by the testimony of Dr. Uram and Dr. Mellon.

One significant aspect of the Company's defense struck at the very foundation of appellant's case. Although Mrs. Lesoon had not disclosed to her doctors that she had a former accident, see *Smith v. Blumberg's Son, Inc.*, 388 Pa. 146, 130 A. 2d 437, it was brought out on cross-examination that, on August 21, 1949, she had been a passenger in the taxicab of the Peoples Cab Company which was involved in a collision. At that time she instituted suit and made settlement for substantially the same injuries which she is claiming in the instant case. Paragraph 12 of her complaint in the prior action set forth various severe injuries to the head, forehead, shoulders and back, including a cerebral concussion, a post-concussion syndrome, and a serious shock to the nervous system, all of which were alleged to be of a permanent nature. Mrs. Lesoon's credibility was also shaken by the fact that she first denied emphatically that she had another accident between 1949 and 1957, whereas she finally

admitted on cross-examination that, on March 15, 1954, she was a passenger in a Yellow Cab which was struck by a streetcar, and that she settled her claim without suit and executed a release.

Appellant relies on *Todd v. Bercini*, 371 Pa. 605, 92 A. 2d 538, wherein Mr. Justice MUSMANNO said: "When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff". In the *Todd* case it was not questioned that the wife-plaintiff had sustained serious injuries, and our Supreme Court affirmed the grant of a new trial for inadequacy. The instant case presents an entirely different situation. A considerable portion of appellant's brief is devoted to showing that Mrs. Lesoon was free from negligence, about which there is no dispute. Appellant relies on this fact as a premise from which to argue that the present award does not fall within the class of compromise verdicts which have received judicial approval, citing *Elza v. Chovan*, 396 Pa. 112, 152 A. 2d 238; *Padula v. Godshalk*, 192 Pa. 618, 161 A. 2d 919. We are not here concerned with a compromise verdict. Cf. *Gottlob v. Hillegas*, 195 Pa. Superior Ct. 453, 171 A. 2d 868.

Appellant asserts that the fact that her testimony was impeached, and the fact that her doctors and those of the Company disagreed on the alleged injuries, might give the jury a right to compromise the total damages claimed, so that only a portion thereof might be awarded, but does not mean that the jury could "ignore all provable and proved damages". To the contrary, it is well established that juries may refuse to give anything for pain, suffering and inconvenience in cases where the plaintiff's evidence as to injuries and damages has been contested and placed in doubt: *Mawhinney v. Holtzhauer*, 168 Pa. Superior Ct. 283, 77 A.

2d 734; *Elza v. Chovan,* supra, 396 Pa. 112, 152 A. 2d 238. The jury who sees and hears the witnesses is not required to believe everything or anything a plaintiff, his doctor, or other witnesses say, even though their testimony is uncontradicted: *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150. The credibility of witnesses lies strictly within the sole province of the jury: *Pryor v. Graff,* 179 Pa. Superior Ct. 622, 117 A. 2d 818.

Under the evidence in the case at bar the jurors could readily have found that appellant in fact suffered no injuries, or that the injuries were so slight that they refused to award damages. In *Kirby v. Carlisle,* 178 Pa. Superior Ct. 389, 116 A. 2d 220, we approved the refusal to allow even nominal damages to vindicate a technical right where no actual loss had occurred. In that case there was an alleged back injury, and this court stated that the "jurors may not have believed the testimony of the plaintiffs and their two physicians concerning the girl's condition, or they may not have been satisfied from the evidence that any back injury from which she might have been suffering sometime after the accident was related to or caused by the accident".

A case somewhat similar to the present appeal is *Hollins v. Pittsburgh Rwys. Co.,* 188 Pa. Superior Ct. 141, 146 A. 2d 622, wherein the jury made no award for the minor, Jerry Hollins, but did return a verdict in favor of his father for the hospital bill. In affirming the refusal by the court en banc to grant a new trial, we said: "The record as to Jerry's case does not present such uncontradicted evidence of injury as would render perverse a finding by the jury that he was actually not injured at all . . . It is understandable that the jury concluded that Jerry sustained no compensable injuries. The award to the parents of the amount of the medical bill is not inconsistent with this finding. We agree with Judge LEWIS in his well con-

sidered opinion for the court en banc that 'it is quite conceivable, however, that the jury took the attitude that the accident having been caused by the negligence of the bus driver, the parents of the minor child should not be put to the expense of finding out if the accident caused any substantial injury to the child, and awarded them the amount of the doctor bill' ".

In the instant case the court en banc expressly found that the verdict was not capricious or against the weight of the evidence. We quote with approval the following excerpt from the opinion below:

"While a verdict of $55.00 in a case that took almost a week to try, and with the amount of medical testimony introduced, would seem to have no reasonable basis, yet a careful analysis of the testimony would indicate that a jury could logically arrive at such a verdict and still be within the bounds of common sense and reason.

"It is evident that the jury concluded that the driver of the Yellow Cab was responsible for the accident, but that the Plaintiff was not injured.

"In view of the fact that they determined that the driver of the Yellow Cab was responsible for the accident, they apparently came to the conclusion that the Yellow Cab Company should pay the Homestead Hospital's bill for the x-rays and the other emergency treatment, particularly in view of the fact that one of the Yellow Cab inspectors took the Plaintiff to the hospital in an apparent attempt to determine if she were injured . . .

"We have a situation then where the jury had to decide whether or not the Plaintiff was injured in the accident.

"The Plaintiff's doctors indicated that the Plaintiff was injured in the accident. On the other hand, the doctors for the defendants testified that, in their opin-

ion, plaintiff's complaints were all subjective and they could not find any evidence of disability.

"The jury apparently accepted the testimony of the physicians called by the defendants and rejected the testimony of the physicians called by the Plaintiff, which, of course, they had a perfect right to do".

We have recently, in *Gottlob v. Hillegas*, supra, 195 Pa. Superior Ct. 453, 171 A. 2d 868, and *Pasqualucci v. Kronz*, 195 Pa. Superior Ct. 462, 171 A. 2d 873, discussed the principles controlling appeals from the refusal of a new trial in the court below. They need not be repeated here. See *Simpkins v. Richey*, 192 Pa. Superior Ct. 46, 159 A. 2d 17; *McCluskey v. Poloha*, 194 Pa. Superior Ct. 286, 166 A. 2d 334. It is our view that the instant record shows no such abuse of discretion as would warrant us in disturbing the action of the court en banc.

Judgment affirmed.