514 A.2d 566

**Marie REIMER, Appellant,**

**v.**

**Paul S. TIEN, Ind. and in the Capacity as President of the American University of the Caribbean, and American University of the Caribbean, Appellees.**

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Aug. 20, 1986.

Catherine Miraglia-Lecky, Norristown, for appellant.

Olena S. Hendler, Jenkintown, for appellees.

Before OLSZEWSKI, HOFFMAN and ROBERTS, JJ.

OLSZEWSKI, Judge:

This appeal comes to us as the result of the judgment of the trial court granting a compulsory non-suit, on all counts, as to appellee Paul S. Tien ("Tien"), a directed verdict as to appellee American University of the Caribbean ("AUC") on three counts, and from the jury award of $3,500 against appellee AUC.

The pertinent facts are as follows. After reading an advertisement in a local paper, appellant contacted AUC for information regarding its medical program. At the appropriate time she applied for admission and was subsequently accepted. In conjunction with this, she paid all applicable fee requirements. In addition, she paid her tuition and room fee. Through this time, appellant continued contact with appellee AUC's Miami office, frequently to gain additional information.

In September, appellant traveled to Montserrat to begin medical school. She remained only eleven days. During this time, she found the conditions most dissatisfying. Many of her experiences became the basis of her complaint. She then left.

After arriving home, appellant made several attempts to contact the school to receive her refund. These attempts proved fruitless. As a result, a lawsuit was filed. At this time, AUC stipulated that appellant was due $2,200 in refunds. Appellees were granted a compulsory non-suit in favor of appellee Tien and a directed verdict on counts II, III, and IV at the close of appellant's case. The jury was allowed to deliberate only as to count I, breach of contract. A verdict was entered in appellant's favor for $3,500. Post-trial motions were filed and later denied. This appeal followed.

## I

We now begin with appellant's contention that the trial court improperly granted a compulsory non-suit as to appellee Tien.

In *West Mountain Poultry Co. v. Gress*, 309 Pa.Super. 361, 455 A.2d 651 (1982), the standard for a compulsory non-suit was enunciated.

"A judgment of non-suit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him together with all reasonable inferences of facts arising therefrom, and any conflict with the evidence must be resolved in his favor." *Engel*

*v. Spino*, 425 Pa. 254, 256, 228 A.2d 745, 746 (1961 [1967]). When a compulsory non-suit is entered, "lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement." *McAuliffe v. Constantine*, 228 Pa.Superior Ct. 52, 54, 323 A.2d 158, 159 (1974). "When an issue of credibility is raised on motion for compulsory non-suit, it is not within the province of the trial judge to determine the believability of the plaintiff's testimony." *Scott v. Purcell*, 490 Pa. 109, 113, 415 A.2d 56, 58 (1980). "Unless there are no conflicting inferences to be drawn it is far better to hear the defense so that the appellate court may have the benefit of findings of fact and conclusions of law." *Shechter v. Shechter*, 366 Pa. 30, 32–33, 76 A.2d 753, 755 (1950). Finally, a non-suit may only be entered where "the facts and circumstances lead unerringly to but one conclusion." *Paul v. Hess Bros.*, 226 Pa.Superior Ct. 92, 94–95, 312 A.2d 65, 66 (1973).

■ After a conscientious review of the record, we are compelled to agree with the trial court's decision. Appellant clearly did not make out a cause of action against appellee Tien. The worst that can be said about Tien was that he was not available to speak with appellant when she so desired and was remiss in answering her letters. This lack of communication does not amount to breach of contract, fraudulent misrepresentation, intentional infliction of emotional distress or negligent infliction of emotional distress. Indeed, appellant admitted on cross-examination that Tien did not personally harass her, verbally abuse her, nor physically attack her. (R.R. 223a). In light of the evidence produced, compulsory non-suit was properly granted according to existing law.

## II.

Appellant next argues that the trial court improperly granted a directed verdict on count II, fraudulent misrepresentation; count III, intentional infliction of emotional distress; and count IV, negligent infliction of emotional dis-

tress. Although the law to be applied is identical in each count, we shall deal with each charge separately.

A judge may direct a verdict for a plaintiff only if there are no facts upon which a jury could properly find for the defendant. *Highland Tank and Mfg. Co. v. Duerr,* 423 Pa. 487, 225 A.2d 83 (1966). If there is a conflict of evidence, and the conflict provides a basis upon which a jury could possibly render a verdict for the party against whom the directed verdict is sought, the case must go to the jury. *Cox v. Equitable Gas Co.,* 227 Pa.Super. 153, 324 A.2d 516 (1974). However, the conflict must be real. If there is no more than a scintilla of evidence on the side ruled against, and a jury could not base its verdict upon that evidence, a directed verdict may still be proper. *Krupa by Krupa v. Williams,* 316 Pa.Super. 408, 463 A.2d 429 (1983).

### Count II. Fraudulent Misrepresentation

The elements of a fraud and deceit action ... may be said to consist of: 1) a false representation of an existing fact, *Fidurski v. Hammill,* 328 Pa. 1, 195 A. 3 (1937); 2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while, if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644, *affirming* 11 D. & C.2d 447 (1958); 3) scienter, which may be either actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances, 16 P.L.E., Fraud Sec. 7; 4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and, 5) damage to the person relying thereon.

*Shane v. Hoffman,* 227 Pa.Super. 176, 324 A.2d 532 (1974).

In suing for fraudulent misrepresentations, appellant alleged that appellees knowingly misrepresented to her that

drugs were not a problem when the truth was that drugs and alcohol were openly pushed; that the school had high standards when the truth was that it allowed her to be harassed and security was lax; that student orientation would be September 14 when it was held September 16 instead; that she would be given a single room; and that class size was approximately thirty students yet while knowing that most classes contained two hundred students. We have studiously reviewed each of these allegations and find them meritless. The directed verdict, then, must stand.

■ Appellant presented no evidence to substantiate her drug and alcohol claim. Not only did she not prove that drugs and alcohol were rampant and openly used, but she did not prove *scienter* on appellee's part nor reliance and damage on her part. Next, a two-day delay in student orientation is not a false representation of a material fact and clearly is not a fact relied on when picking a school. In addition, we can ascertain no damage to appellant. Since appellant received the single room, albeit with some difficulty, represented as available, she cannot use it as the basis for misrepresentation. Last is the "misrepresentation" as to class size. Testimony revealed that this was a misunderstanding, lab classes contained approximately thirty students while lectures were closer to two hundred. (R.R. 381–382.). Since appellant received brochures of the school and she noted that the classrooms "showed a lot of chairs, like an instruction room," even if she had been told that class size was thirty students, she should have realized the discrepancy. It is not enough for fraudulent misrepresentation.

### Count III. Intentional Infliction of Emotional Distress

■ According to the Restatement (Second) of Torts Sec. 46 (1965), liability for this tort is allowed against "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another...." It is clear that the crucial element is extreme and outrageous

conduct. *Dawson v. Zayre Dept. Stores,* 346 Pa.Super. 357, 499 A.2d 648 (1985); *Jones v. Nissenbaum Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976). Further, it is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Dawson, supra;* Restatement (Second) of Torts Sec. 46, comment (h) (1965).

Conduct which does not meet the requisites for liability is described in comment (d) of the Restatement (Second) of Torts Sec. 46:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialties. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

■ The conduct recited in appellant's complaint does not meet the burden of extreme and outrageous. Banging on her room door and being given pornography are surely annoying and possibly even insulting, but annoying and insulting are not extreme and outrageous. A large class may be inconvenient, but inconvenient is not extreme and outrageous. Absent a showing of extreme and outrageous conduct, the directed verdict will be affirmed.

## Count IV. Negligent Infliction of Emotional Distress

The Restatement (Second) Torts, Sec. 436 provides:

### Sec. 436. Physical Harm Resulting from Emotional Disturbance

(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other

emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occuring in his presence.

Restatement (Second) Torts, Sec. 436A states:

### Sec. 436A. Negligence Resulting in Emotional Disturbance Alone

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

Comment A to the Section explains that "Under the rule stated in this Section, the negligent actor is not liable when his conduct results in the emotional disturbance alone, without the bodily harm or other compensable damage."

*Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981); *see also, Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

█ The facts set out by appellant do not suffice to uphold a cause of action in this instance. Appellant's list of grievances which make up count IV does not amount to a violation of any duties on the part of appellees. In addition,

appellant did not sufficiently prove bodily injury as a result of any negligence by appellees. Without this proof, we are compelled to sustain the directed verdict. *Sinn, supra; Banyas, supra; see also, Cathcart v. Keene Industrial Association,* 324 Pa.Super. 123, 471 A.2d 493 (1984).

### III.

Our third point of review concerns the actions of the judge during the trial. Appellant alleges that the judge made improper remarks, was biased in appellees' behalf and "cross-examined" appellant's witnesses. It is further alleged, as proof of the judge's prejudice against appellant, that he overruled only 14% of appellees' objections but 70% of appellant's objections. Because of this, appellant asserts she is entitled to a new trial.

■ With respect to the judge's "cross-examination" of appellant's witnesses, we find no error. A reading of the trial transcript reveals that the judge's questions were not biased or prejudicial but were intended to clarify points and gain additional information for the jury. A multitude of cases have held that questions by the judge are entirely proper. *See, Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054 (1985); *Potochnik v. Pittsburgh Railways Co.,* 379 Pa. 154, 108 A.2d 733 (1954); *Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982); *Commonwealth v. Folino,* 293 Pa.Super. 347, 439 A.2d 145 (1981); *Commonwealth v. Hodge,* 246 Pa.Super. 71, 369 A.2d 815 (1977); *Commonwealth v. McMillion,* 215 Pa.Super. 306, 265 A.2d 375 (1969).

Appellant cites many instances of improper remarks by the judge. A careful review of the trial transcript shows that these comments, taken in context, do not amount to bias and prejudice. We therefore decline appellant's requested remedy and affirm the lower court.

### IV.

Appellant's next issue alleges improper evidentiary rulings by the trial judge in the areas of hearsay and relevance which resulted in prejudice to Marie Reimer.[1]

1. Appellant's brief also refers the Court to other miscellaneous evidentiary rulings that are allegedly erroneous. We have read the tran-

## Hearsay

Our Court recently set forth the basic rules of hearsay in *Spotts v. Reidell*, 345 Pa.Super. 37, 497 A.2d 630 (1985).

It is well-established that an out-of-court declaration constitutes hearsay if it is offered for the purpose of proving the truth of the matter contained in the declaration. *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968); *Klischer v. Nationwide Life Insurance Co.*, 281 Pa.Super. 292, 422 A.2d 175 (1980). *See* Fed.R.Evid. 801(c). However, an out-of-court statement is not hearsay when it is introduced purely for the purpose of establishing that the statement was made and not to establish its truth. *See, e.g. Baldino v. Castagna*, 308 Pa.Super. 506, 454 A.2d 1012 (1982); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A.2d 710 (1962); *Wagner v. Wagner*, 158 Pa.Super. 93, 43 A.2d 912 (1945). Likewise, an out-of-court statement is not hearsay if it is offered to explain a course of conduct. *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980), or to reflect the declarant's state of mind. *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974). *See also*, McCormick, *On Evidence*, Sec. 294–96 (3rd Ed. 1984).

■ The complained-of statements excluded on the grounds of hearsay primarily concerned remarks made to appellant by other people at AUC. It was argued then, as now, that these remarks were not offered as the truth but only to show that they were made. We cannot agree. Appellant's claim against appellee AUC pertained in part to the conditions and action of AUC and its students. Many of the statements excluded directly related to this issue. Thus, comments made to appellant about drugs on campus and remarks pertaining to other students were offered to prove that appellant's claims were true. The testimony was

script and the pages cited by appellant and find no error. We decline to discuss each of these rulings individually as appellant did not do so herself.

therefore offered to be the truth and was properly excluded by the trial judge.

## Relevancy

Pennsylvania finds evidence relevant "when it tends to establish facts in issue," *Leroi v. Civil Service Commission of City of Philadelphia*, 382 A.2d 1260, 34 Pa. Cmwlth. 190 (1978), or when it "in some degree advances the inquiry and thus has probative value," *Bowers v. Garfield*, 382 F.Supp. 503, *aff.* 503 F.2d 1398 (Pa.1974). *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 433 A.2d 40 (1981).

(T)he fundamental consideration in determining the admissibility of evidence is whether the proffered evidence is relevant to the fact sought to be proved. Evidence is relevant if it tends to make a fact at issue more or less probable.

*Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983); *See Gregg v. Fisher*, 377 Pa. 445, 105 A.2d 105 (1954).

Relevant evidence is nonetheless excluded "if the probative value is substantially outweighed by the danger of unfair prejudice or confusion," *Carter v. Hewitt*, 617 F.2d 961 (Pa.1980). "Prejudice," of course, does not mean "detrimental to a party's case" but rather "an undue tendency to suggest decision on an improper basis."

*Whistler Sportswear, Inc., supra.*

In addition, *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978) states:

... the fact that testimony is relevant is not by itself enough to show that its exclusion was error.

The general rule is that "questions concerned with the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists." *Westerman v. Stout*, 232 Pa.Super. 195, 202, 335 A.2d 741, 745 (1975); *Patrick F. Dalton Company v. Trans-American Freight Lines, Inc.*, 219 Pa.Super. 223, 280 A.2d 635 (1971); *Cartmel v. Williams*, 207 Pa.Super. 144, 215 A.2d

282 (1965); *Wolfe v. Pickell,* 204 Pa.Super. 541, 205 A.2d 634 (1964). In exercising this discretion, the trial judge may refuse to admit evidence on the grounds that it may "confuse, mislead or prejudice the jury." (citations omitted).

Appellant's first complaint in this relevancy issue is that the court should have allowed evidence relating to attorney's fees in her attempt to collect the tuition refund. Since it was admitted by appellees that appellant was entitled to a refund, appellant argues that attorney fees were compensatory, incidental and/or consequential damages.

We do not agree that the evidence regarding attorney fees was probative to any material issue. Additionally, appellant was not entitled to attorney fees. *See Becker, et ux. v. Borough of Schuylkill Haven,* 200 Pa.Super. 305, 189 A.2d 764; 42 Pa.C.S.A. Sec. 2503. Therefore, the testimony was properly excluded as irrelevant.

Next, we discuss appellant's contentions that certain evidence which was admitted was irrelevant and such evidence was thus prejudicial. Specifically, appellant cites the evidence relating to Howard Lantner, a student list, and the testimony of Patricia Litwin regarding laboratory class size and water temperature at AUC. Again, we find the judge's ruling on relevancy was entirely proper.

With respect to the testimony of Patricia Litwin, we note that a portion of appellant's claim for breach of contract dealt with a too large class and unsuitable hot water. Since appellant introduced testimony as to what Ms. Litwin told her about the class size and water temperature, appellees were proper in questioning Ms. Litwin on these same issues. Appellant's testimony as to class size also allowed appellees to introduce a class list. The time of the compilation of the list was fully explored and would go to weight, not relevance.

Furthermore, appellant charged that Howard Lantner was a student at AUC and participated in the harassment

about which she now complains. The evidence offered[2] was relevant not only to undermine appellant's assessment and credibility of Howard Lantner but also to show the quality of the school was not as she described. This reasoning was expressed by the trial court in conjunction with its overruling appellant's objections and will not be overturned at this point. We find no abuse in the judge's decision.

## V.

We now address appellant's contention that the trial court's jury instructions were erroneous, misleading, confusing and prejudicial. This issue is three-pronged: appellant's charges which were refused; appellees' charges which were accepted; and instructions by the trial judge. For the following reasons, we decline to find error.

It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984); *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972); *Vanic v. Ragni*, 435 Pa. 26, 254 A.2d 618 (1969).

In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Reilly by Reilly v. Southeastern Pa. Transp.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730 (1977); *McCay v. Philadelphia Electric Co.*, 447

---

**2.** The evidence offered was part of Howard Lantner's AUC records consisting of letters from Howard Lantner and Hahnemann Medical School to AUC.

Pa. 490, 291 A.2d 759 (1972); *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970).

Furthermore, "(a) judgment is seldom reversed for error in the charge unless that error is the inclusion of 'incorrect and misleading statements as to a material fact,' " *Whistler Sportswear, Inc., supra.* With this in mind, we turn to appellant's specific complaints.

### Appellant's Charges

The judge first refused appellant's charge pertaining to incidental costs, which she believed she was entitled to recover. These included the costs of transportation to and from Mexico to learn Spanish, the cost to learn Spanish, and additional costs of living in Mexico. Connected to this was the modification of another damage instruction limiting recovery to $6,660.

On these issues, the judge instructed the jury as follows:

The measure of damages for a breach of a written contract is compensation for the loss sustained by reason of the breach. The damages recoverable by the plaintiff in this case and the items that go to make up each, of which I should discuss separately, are the following: A, all monies paid by plaintiff to defendant for fees, tuition, room and board, purchase of books and other materials, purchase of food, et cetera; all monies paid by plaintiff for transportation to and from Montserrat, including but not limited to air fare, excess baggage charges, taxi fares, et cetera; all monies paid by plaintiff for miscellaneous expenses, including but not limited to, additional taxi fares, telephone charges, costs of mailing, postage and telegrams, room and board, et cetera; all monies expended necessarily by plaintiff if you find they were incurred as a result of defendant's breach of contract and are naturally and probably damages resulting from said breach.

On the other hand, let's flip the coin. If the plaintiff breaches the contract, then these damages do not necessarily flow from her breach of contract and are not

compensable to her, then we necessarily get back to those refund items of the tuition and a portion of the room deposit as being the only things compensable by reason of the notice to the university of her withdrawal. None of these other expenses are in any way involved if she is the breaching party.

All monies paid by the plaintiff, if she had the contract breached by the defendant, for entry and exit fees to Montserrat, passport fees and student fees. In the event that you find in favor of the plaintiff, you should add the sums of damage together and return your verdict in a single lump sum, but no greater than six six six 0, which was demanded in the complaint.

As the judge noted, appellant requested $6,660 in damages in her complaint. The complaint did not allege the incidental costs she now wants. To recover costs for a breach of contract, compensation is given only for those injuries that are a direct and foreseeable result of the breach. *See The Dimitros Chandris,* 43 F.Supp. 829 (1942); *Emerman v. Baldwin,* 186 Pa.Super. 561, 142 A.2d 440 (1958). *See also,* Subcommittee Note to Proposed Jury Instructions, 6.01K Incidental Costs (1973). The damages appellant requested, and were rejected in the instruction, do not fall within this category. As set out, the judge's instructions sufficiently apprise the jury of their duty as to the measure of the damages.

### Appellees' Charge

Appellant also objects to the acceptance of appellees' charge that reads:

You may not find the school liable merely because the materials contain opinions or flattering statements unless they were false and misleading and Plaintiff had a right to rely on them. You must also inquire as to whether plaintiff sufficiently was prepared (physically and emotionally)[3] for Medical School and the environment on a Caribbean Island.

---

**3.** It appears that these words were inserted by the judge.

It is asserted that this is not an accurate statement of the law and was waived by appellees since it was not raised as a defense.

■ We do not agree with appellant. Appellant cannot claim a breach of contract based on statements in a brochure unless such statements were a material misrepresentation. *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). Misrepresentation must be distinguished from mere "puffing." *Berkebile, etc., supra.* An instruction to this effect was proper.

### Instructions Given

Lastly, appellant cites numerous excerpts from the judge's instructions and claims they are inaccurate and/or misleading, confusing, and prejudicial. We have carefully reviewed the entire jury charge and fail to find support for appellant's averments. The charge as a whole does not demonstrate prejudice. We therefore will not reverse.

### VI.

We now come to appellant's last allegation of error, that the verdict was against the law, the evidence and the weight of the evidence. It is submitted that since the jury returned a verdict in excess of the amount admittedly owed ($2,200), they had determined that appellees had breached the contract and therefore should have returned a verdict for the entire amount of the loss, $6,660.

■ The law surrounding this issue is well-settled and was comprehensively set out by this Court in *Deitrick v. Karnes*, 329 Pa.Super. 372, 478 A.2d 835 (1984).

The amount of the verdict is an issue for the jury; it will rarely be held inadequate on appeal. Our Pennsylvania Supreme Court, in *Elza v. Chovan*, 396 Pa. 112, 152 A.2d 238 (1959), commented on the scope of the jury's authority:

> It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. The mere fact that a verdict is low does not mean that it is inadequate. (citations omitted). *Id.*, 396 Pa. at 115, 152 A.2d at 240.

This Court in *Morris v. Peckyno*, 202 Pa.Super. 490, 198 A.2d 396 (1964), quoting 15 Am.Jur., Damages, Sec. 231, refined the standard for reviewing an allegedly inadequate verdict:

> As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evidence failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. *Id.*, 202 Pa.Superior Ct. at 492, 198 A.2d at 397.

Stated more familiarly, a jury verdict will not be set aside in the absence of clear error of law or palpable abuse of discretion. *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970); *Rhodes v. Hollender*, 260 Pa.Super. 290, 393 A.2d 1268 (1978); *Gottlob v. Hillegas*, 195 Pa.Super. 453, 171 A.2d 868 (1961). Finally, we note that the *Elza* court set the standard of review in more graphic terms when it propounded that reversal on ground of inadequacy of the

verdict is appropriate only where "the injustice of the verdict (stands) forth like a beacon." *Elza v. Chovan*, 396 Pa. at 118, 152 A.2d at 241.

Mere disparity between the amount of the verdict and out-of-pocket expenses is not in itself sufficient grounds to disturb a verdict. *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979).

■■■ A meticulous inspection of the evidence requires us to deny appellant's request. The jury award reflects their determinations as to credibility and worth of testimony. We deem it entirely proper that the award shows that the jury chose to reject the majority of appellant's claims.

In admitting appellant to its school, appellees contracted to provide a medical education, as well as certain necessities that could be expected at any learning institution. The record is replete with facts that negate appellant's contention that appellees breached this contract. To begin, there was evidence of the quality of education, two of appellant's friends during her brief time at AUC have become successfully placed. All the basic courses were taught; although appellant complains that one professor taught two courses, she offers no proof that any of the professors were unqualified. This is hardly a breach of contract.

Dealing directly with the quality of education, appellant complained about cancelling and rescheduling classes. She alleged that the first five days were disorganized. This looks to be appellant's most substantive argument. A closer look discloses it to be meritless. Orientation was postponed for two days due to the difficulty approximately one-third of the students had in arriving. Appellant admitted this (R.R. 112a). Appellant also testified that some of the classes were held and roll was established. (R.R. 114a). In addition, many of the classes were rescheduled. (R.R. 417a). Appellant's testimony concerning lack of seating, audio, and visual problems in the classrooms was extensively refuted. Testimony disclosed the use of microphones,

the length of the blackboards, the number of seats and that the rooms were built so that there were no visual obstructions. (R.R. 412).

Appellant was also provided with the single room for which she contracted. She cannot, then, cite this as an instance of a breach. Hot water is the next allegation of a breach. While it would appear that hot water would be a part of the contract (as part of the living arrangements), it is not enough to be considered a breach. Testimony indicated that there was water that was hot enough for normal use, it just was not hot enough for appellant's use.

Much of appellant's complaints centered on the fact that she was harassed by other students and the security at the school was subpar. She makes reference to people pushing their way into her room and calling to her from below her window. The testimony belies these complaints. It is obvious that many of the instances were attempts by the others to be friendly. (*See*, R.R. 118a–120a; 129a–1341a). Her complaints about the guards were refuted by a witness appellant thought of as her friend at AUC. This testimony contradicted many of appellant complaints concerning drugs, harassment and lack of security. (R.R. 421–422; 424–426).

We are of the opinion that the jury award accurately reflects the testimony. Clearly, the jury executed its duties in assessing the worth and credibility of the witness. There is no glaring discrepancy between the testimony and verdict. We hesitate to invade the province of the jury in this situation. As such, we will uphold the verdict as being in line with the evidence and decline to award appellant a new trial.

Judgment affirmed.