Arnold  v.  Davis

254

C.P. of Pike County, no. 134-1992-Civil.

*Alan Starker,* for plaintiff.
*Charles Kannebecker,* for defendands Davis.
*Bruce L. Coyer,* for additional defendant Schutt.

THOMSON, *P.J.,* April 3, 1996—

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

This is an appeal by Marguerite Arnold, administratrix of the estate of Joseph Andrew Arnold III to this court's decision of January 16, 1996 which denied appellant's motion for post-trial relief. The decision was duly appealed and by our order of March 6, 1996 we directed the appellant to file a concise statement of matters complained of on appeal within 10 days. Appellant's concise statement was untimely filed on March 18, 1996.

## FACTS

This action arises out of an automobile accident which occurred on January 28, 1990. Joseph Arnold III was fatally injured as a passenger in the car driven by Bruce Schutt. The men were involved in the accident after attending a Super Bowl Party at R.J.'s Tavern.

On May 16, 1992, the estate of Joseph Arnold III instituted an action against Mr. and Mrs. Robert Davis, individually and d/b/a as R.J.'s Tavern. The complaint essentially alleged that the defendants had violated the Dram Shop Act by serving Schutt alcohol while he was visibly intoxicated. On March 30, 1992, defense counsel filed a praecipe to join Bruce Schutt as an additional defendant. Prior to trial, plaintiff executed a release in favor of additional defendant Bruce Schutt.

A jury trial was held on July 18-19, 1995. Schutt testified that he drank two or three beers in the late afternoon before going to the tavern. The men arrived at the tavern between 6 p.m. and 6:30 p.m. and stayed until 10 p.m. to 10:30 p.m. that evening. Schutt was unable to recall exactly how many beers he drank at the tavern. (N.T. 77-79.)

Plaintiff produced no evidence that defendant Schutt was served while visibly intoxicated. On the contrary, witnesses testified that they saw defendant Schutt that evening and that he did not appear to be intoxicated. (See generally, N.T. 141-42, 217, 238, 267.)

Upon leaving the tavern, the men purchased a six-pack of beer. Defendant Schutt testified that he did not remember whether the men drank the six-pack. (N.T. 111-12.) At around 11 p.m., the men were involved in the automobile accident.

As stated, no evidence was produced by the plaintiff to show that defendant Schutt was visibly intoxicated any time he was served alcohol in R.J.'s Tavern. The jury found that defendant Bruce Schutt was not served while visibly intoxicated and returned a verdict in favor of defendant Davis.

This trial was marred by the unprofessional conduct of appellant's counsel. At trial, appellant was represented by Attorney Alan Starker. Appellant's counsel had filed

a certificate of trial readiness in March of 1995. However, on the morning of trial it quickly became apparent that counsel was not ready to present his case. Before the jury was brought in, the parties met in chambers and Attorney Starker presented the court with a flurry of last-second motions and issues to be decided. The attorney for defendant Davis filed a motion for discovery sanctions.

Appellant's counsel became increasingly frustrated with the court's pretrial rulings. Attorney Starker directed his frustrations at the court and was soon found in contempt. (See generally, N.T. 1-89; 90-94.) Attorney Starker continued to affront the court even after being held in contempt. (See generally, N.T. 237, 257-58, 260.) As a result of her attorney's conduct, appellant's case quickly disintegrated. We offer the following quote of Pennsylvania Supreme Court Justice Flaherty for the edification of Attorney Starker:

"The 'law' is given corporeal existence in the form of the judge. When carrying out the judicial function, the judge becomes a personification of justice itself. When presiding over any aspect of the judicial process, the judge is not merely another person in the courtroom, subject to affront and insult by lawyers. 'The obligation of the lawyer [is] to maintain a respectful attitude toward the court is "not for the sake of the temporary incumbent of the judicial office," but to give due recognition to the position held by the judge in the administration of the law.' ABA Standards, The Defense Function, §7.1, Commentary at 259. The judge *is* the court, and a display of insolence and disrespect to him is an insult to the majesty of the law itself.

"Disrespectful conduct by an attorney while in the court's presence has much greater impact and is much more than merely a dispute between a judge and lawyer.

'Public respect for law derives in large measure from the image which the administration of justice presents. It is not enough that justice be done; there must also be the appearance of justice . . . .' ABA Standards, The Defense Function, §7.1, Commentary at 260. As Mr. Justice Pomeroy so pertinently stated, 'Unlike the layperson, the lawyer is duty bound to manifest an attitude of professional respect toward the court and its processes. His conduct in the courtroom can have great impact on the extent to which the proceedings are perceived as fair and dignified by juror, defendant, witness, and spectator. He possesses the unique capability of denigrating the proceedings through eloquently clothed charges of impropriety.' *In re Johnson,* 467 Pa. [552,] 565, 359 A.2d [739,] 746 [(1976)] (Pomeroy, J., dissenting)." *Commonwealth v. Rubright,* 489 Pa. 356, 364-65, 414 A.2d 106, 110-11 (1980). (emphasis in original)

## DISCUSSION

Appellant's post-trial motion consisted of a motion for judgment notwithstanding the verdict and a motion for a new trial. The motion contained 40 claims of error. Appellant attempted to condense those 40 claims into 10 concise statements of matters complained of on appeal. We preface our discussion with the oft repeated proposition "that the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid." *Commonwealth v. Ellis,* 534 Pa. 176, 183, 626 A.2d 1137, 1140 (1993); see also, *Commonwealth v. Akers,* 392 Pa. Super. 170, 175, 572 A.2d 746, 748 (1990). Believing all of appellant's claims are without merit, we stand by our decision.

The Pennsylvania Dram Shop Act contains two pertinent provisions:

*"Section 4-493 Unlawful Act relative to liquor, malt and brewed beverages . . .*

"(1) It shall be unlawful for any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated . . .

*"Section 4-497 Liability of licensee*

"No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent, servant or employee when the said customer was visibly intoxicated." 47 Pa.C.S. §§4-493(1) and 4-497.

"A violation of this statute is deemed negligence per se." *Johnson v. Harris,* 419 Pa. Super. 541, 550, 615 A.2d 771, 775 (1992). (citations omitted) In order to recover, a plaintiff must prove: (1) that a customer of the licensee was served alcoholic beverages by the licensee, or his employees, servants, or agents while visibly intoxicated; and (2) that this violation of the statute was a proximate cause of plaintiff's injuries. *Id.,* citing *McDonald v. Marriott Corp.,* 388 Pa. Super. 121, 125, 564 A.2d 1296, 1298 (1989).

"Even if a patron is intoxicated at the time he or she . . . causes injury to another, the tavern keeper who served the alcoholic beverages to the patron will not be held civilly liable unless the patron was served at a time when he or she was visibly intoxicated."

*Holpp v. Fez Inc.,* 440 Pa. Super. 512, 517, 656 A.2d 147, 149 (1995). (citations omitted)

As to the proper meaning of "visibly intoxicated," the Superior Court has stated:

"[I]n defining the violation as the dispensation of alcoholic beverages to a person 'visibly intoxicated,' the statute displays considerable logic in placing stress upon what can be seen. The law does not hold a licensee or its agent responsible on any basis, such as blood alcohol level of a patron, which would not be externally apparent; instead, the law decrees that the alcoholic beverage dispenser shall not provide more alcohol when the signs of intoxication are visible. *The practical effect of the law is to insist that the licensee be governed by appearances, rather than by medical diagnoses."* *Johnson, supra* at 551, 615 A.2d at 776, quoting *Laukemann v. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board,* 82 Pa. Commw. 502, 506, 475 A.2d 955, 956-57 (1984). (emphasis in original) (citations omitted)

## I. *Motion For Judgment Notwithstanding the Verdict*

A judgment notwithstanding the verdict is an extreme remedy which can only be entered in a clear case. *Lira v. Albert Einstein Medical Center,* 384 Pa. Super. 503, 508, 559 A.2d 550, 552 (1989). A j.n.o.v. will only be granted where no two reasonable persons could disagree that the jury's verdict was improper. *Id.; Smith v. Renaut,* 387 Pa. Super. 299, 304-305, 564 A.2d 188, 191 (1989). The record at the close of the trial determines the right of the court to enter such judgment. *Hershberger v. Hershberger,* 345 Pa. 439, 442, 29 A.2d 95, 97 (1942).

In considering a motion for a j.n.o.v., the evidence is considered in a light most favorable to the verdict winner. *Lira, supra* at 508, 559 A.2d at 552. The verdict winner is entitled to the benefit of any reasonable deductions or inferences from the evidence. *Id.* Doubts and conflicts are to be resolved in favor of the party favored by the verdict. *Broxie v. Household Finance Co.,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). (citation omitted)

Appellant listed 21 grounds in support of her motion for judgment notwithstanding the verdict. A review of the record in a light favorable to defendant Davis as the verdict winner, reveals that none of the grounds warrant the granting of plaintiff's motion for j.n.o.v. Plaintiff did not produce any evidence to establish the crucial element of her case, which was that the defendant Bruce Schutt was served alcohol in R.J.'s Tavern while visibly intoxicated. Therefore, we denied appellant's motion for j.n.o.v. after finding that no two reasonable persons could disagree that the jury's verdict was improper.

## II. *Motion for New Trial*

Appellant lists 19 claims of trial error in support of her motion for a new trial. Initially, we note that "[a] new trial will not be granted where no useful purpose will be served thereby, and no such trial will be ordered where it appears that the moving party would not prevail in any event." 10 Standard Pa. Practice 2d §62:76, citing *Rice v. Bauer,* 359 Pa. 544, 59 A.2d 885 (1948).

We believed that all 19 claims of error in support of appellant's motion were without merit. Even if any of the claims were merited, we believe that any errors, singularly or cumulatively, were harmless given the

fact that appellant failed to provide any evidence to support the crux of her case. However, should the Superior Court reach the merits of any of plaintiff's claims, we offer the following reasoning in support of our decision.

Paragraphs 22 and 23 of appellant's motion assert that the verdict was against the weight of the evidence. A new trial should be awarded on the ground that the verdict was against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so as to prevent a miscarriage of justice. *Kopeika v. Medical Services Association,* 347 Pa. Super. 500, 506-507, 500 A.2d 1168, 1171 (1985). The jury's verdict was consistent with the evidence presented, or rather the lack of evidence presented by the appellant, and therefore we found these claims meritless.

In paragraph 24 of her motion appellant claims the verdict was against the charge of court. In order to secure a new trial on this ground, the complaining party must show that the jury disregarded the instructions of the court. 10 Standard Pa. Practice 2d §62:56, p. 273. (citations omitted) The appellant failed this burden and we found paragraph 24 to be without merit.

Appellant claims the jury instructions and verdict form were erroneous, confusing, misleading and prejudicial. See paragraphs 25, 26, 27, 28, and 29 of appellant's motion for post-trial relief. Appellant's claims are without merit for the following reasons.

"The primary purpose of a court's charge to the jury is to apprise the members of the jury, in an understandable manner, of the legal principles by which they must decide the case." *Hawthorne v. Dravo Corp., Keystone Division,* 352 Pa. Super. 359, 368, 508 A.2d 298,

302 (1986). The "trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wilson v. Anderson,* 420 Pa. Super. 169, 173, 616 A.2d 34, 36 (1992), citing *Seewagen v. Vanderkluet,* 338 Pa. Super. 534, 545, 488 A.2d 21, 26 (1985); *Pratt v. Stein,* 298 Pa. Super. 92, 142, 444 A.2d 674, 700 (1982).

"It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies." *Reimer v. Tien,* 356 Pa. Super. 192, 206, 514 A.2d 566, 573 (1986). (citations omitted) (emphasis in original)

For a party "to be entitled to a new trial (on the basis of erroneous jury instructions), the instructions complained of must be fundamentally in error, and it must appear that the erroneous instructions might have been responsible for the verdict." *Hawthorne, supra* at 368, 508 A.2d at 303, quoting *McCann v. Amy Joy Donut Shops,* 325 Pa. Super. 340, 342, 472 A.2d 1149, 1150 (1984) (en banc). A new trial is "appropriate where the instructions, although perhaps not erroneously stating the law, have misled or confused the jury." *Id.,* citing with "see" signal *Takach v. B.M. Root Co.,* 279 Pa. Super. 167, 420 A.2d 1084 (1980); *McEwan v. Yellow Cab Co.,* 182 Pa. Super. 219, 126 A.2d 816 (1956).

Furthermore, "[a] judgment is seldom reversed for error in the charge unless that error is the inclusion of incorrect and misleading statements as to a material fact." *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 247, 433 A.2d 40, 49 (1981). We note that at

the conclusion of the instructions we invited and accepted the parties' suggestions for additions to or modifications of the charge. (N.T. 393.) See *Keefer v. Byers,* 398 Pa. 447, 452, 159 A.2d 477, 479-80 (1960). With these standards in mind, we turn to appellant's specific allegations of error.

In paragraph 25, appellant claims we erred in instructing the jury on contributory negligence, comparative negligence and assumption of the risk. We believed these instructions were warranted by the evidence. The jury instructions at issue were read verbatim from Pennsylvania Suggested Standard Civil Jury Instructions. Therefore, we did not believe they were misleading or confusing. Furthermore, we made no incorrect or misleading statements concerning any material fact. Rather, appellant merely claims that we made a legal error in reading these instructions.

It was not even necessary for the jury to move forward and consider the issues of contributory negligence, comparative negligence, or assumption of risk. The jury deliberated for approximately two hours and five minutes. The first question on the verdict sheet asked whether defendant Davis served defendant Schutt alcohol while he was in a visibly intoxicated condition. The jury recognized the failure of appellant's proof, answered the first question in the negative and returned to the courtroom as directed by the verdict sheet. Therefore, the error in giving these instructions, if any, was harmless.

In paragraphs 26 and 29 appellant asserts that it was error and an abuse of discretion to instruct the jury without giving counsel the opportunity to review the court's charge or the verdict form. Appellant's brief and this court's own research failed to reveal any authority requiring such action. While it is not customary

to hold a pre-charge conference in this court, such conferences are routinely granted when respectfully requested. Furthermore, appellant's counsel was given an opportunity to suggest changes and state objections when the instructions were given.

Appellant alleges error with regards to the verdict form. We acknowledged that the instructions concerning the verdict form may have been confusing. (N.T 397.) We do not believe this isolated instance of confusion served to taint the entire instructions. See *Reimer, supra* at 206, 514 A.2d at 573 (1986). (citations omitted) Review of the verdict form reveals that it was a standard form, clearly and concisely written. Therefore, we believe there was no error in this instance.

Paragraphs 27 and 28 claim error in regards to the court's instructions on the Dram Shop Act. (See N.T. 374-78, 393-94.) Appellant asserts in paragraph 27 of her motion that we erred by instructing the jury on defendant's proposed point for charge no. 10. We did not read defendant's proposed point for charge no. 10 to the jury.

In paragraphs 27 and 28, appellant also claims we erred by merely referring to the liability of "licensees" as opposed to a "bar owner or other persons." We have reviewed our instructions on this issue and find appellant's claims to be without merit. We clearly and correctly stated the law twice: once in our instructions (N.T. 374-78) and again in a clarification unnecessarily requested by appellant's counsel. (N.T. 393-94.) Therefore, we found paragraphs 27 and 28 of appellant's motion to be without merit.

Paragraphs 30 and 33 contain claims of error concerning our denials of appellant's requests for continuances. On March 15, 1995 the appellant filed a certificate of trial readiness which stated, in pertinent part, that

"all necessary parties and witnesses will be available." The matter was set for the July trial term.

On June 20, 1995, the court received a letter from Attorney Kornblau. Attorney Kornblau is a partner in Attorney Starker's firm and was originally listed as appellant's trial attorney. The letter requested a rescheduling of the trial based upon Attorney Kornblau's vacation plans. No mention was made in the letter of potential problems in securing the attendance of witnesses.

During pretrial conference in chambers on the first day of trial, Attorney Starker alleged that the witnesses were properly subpoenaed on July 5, 1995. Defendant Davis raised an issue as to whether the witnesses were duly subpoenaed by appellant's counsel.

On July 7, 1995, the court had denied appellant's motion for a continuance due to an alleged inability to secure the attendance of witnesses at trial. On July 18, 1995, the day of trial, Attorney Starker again requested a continuance due to his alleged inability to secure the appearance of witnesses.

An application for a continuance is governed by 42 Pa.R.C.P. 216. Rule 216(C) states that "[n]o application for a continuance shall be granted if based on a cause existing and known at the time of publication or prior call of the trial list unless the same is presented to the court at a time fixed by the court, *which shall be at least one week before the first day of the trial period.*" 42 Pa.R.C.P. 216(C). (emphasis added) Therefore, appellant's request for a continuance on the day of trial was properly denied.

Furthermore, it is the well-settled Pennsylvania law that application for a continuance is an appeal to the discretion of the trial judge which should not be reversed absent an abuse of that discretion. *Nerkowski v. Yellow*

*Cab Co. of Pittsburgh,* 436 Pa. 306, 309, 259 A.2d 171, 173 (1969). (citation omitted) The Pennsylvania courts have repeatedly affirmed refusals of continuances on the grounds of lack of exercise of due diligence in securing testimony. *Carey v. Philadelphia Transportation Co.,* 428 Pa. 321, 324, 237 A.2d 233, 235 (1968); *Love v. Harrisburg Coca-Cola Bottling Co. Inc.,* 273 Pa. Super. 210, 214, 417 A.2d 242, 244 (1979). (Both cases involved refusals where the unavailability of a witness was the basis for the motion for a continuance.)

Exercising our discretion, we found that appellant's counsel's own neglect wasted the ample time available to utilize whatever devices of the court were necessary to secure the attendance of his own witnesses. Appellant's motions for continuance were therefore denied.

Appellant also raises allegations of error in regards to our exclusion of certain evidence. In paragraph 31 appellant asserts that we erred, abused our discretion and displayed our bias by refusing to allow appellant to introduce evidence concerning Bruce Schutt's blood alcohol level at the time of the accident. Appellant alleges in paragraph 32 that we erred, abused our discretion and displayed our bias by refusing to permit appellant to introduce evidence of Bruce Schutt's guilty plea in the criminal matter related to this case. These allegations are repeated in paragraph 39.

On the day of trial, defendant Davis presented the court with a motion for discovery sanctions seeking the exclusion of the above evidence. Under 42 Pa.C.S. §4019(c)(2), this court is permitted to enter an order "prohibiting [the disobedient party] from introducing in evidence designated documents, things or testimony . . . ." Rule 4019 provides a "blanket authorization to the court to enter a sanction order whenever there is a failure to make discovery or to obey an order

of the court. 1978 Explanatory Note to Rule 4019; *Griffin v. Tedesco,* 355 Pa. Super. 475, 481, 513 A.2d 1020, 1023 (1986). The defendant argued discovery abuses by the appellant. (See N.T. 11-16.)

The evidence concerning Schutt's alleged blood alcohol level and guilty plea was inadmissible. Appellant attempted to proffer Schutt's alleged blood alcohol test result without foundation or authentication. Moreover, evidence of Schutt's blood alcohol content would have been highly prejudicial and was therefore inadmissible.

The trial court is granted "broad discretion regarding the admissibility of potentially misleading and confusing evidence." *Whyte v. Robinson,* 421 Pa. Super. 33, 38, 617 A.2d 380, 383 (1992). (citation omitted) A trial court may "properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citation omitted)

. In the context of Dram Shop cases, a blood alcohol test is relevant circumstantial evidence of intoxication only when used in conjunction with other independent evidence which bears on the question of whether an individual was visibly intoxicated. *Suskey v. Loyal Order of Moose Lodge No. 86,* 325 Pa. Super. 94, 100, 472 A.2d 663, 667 (1984); see also, *Cusatis v. Reichert,* 267 Pa. Super. 247, 250-51, 406 A.2d 787, 789-90 (1979); *Couts v. Ghion,* 281 Pa. Super. 135, 144-45, 421 A.2d 1184, 1189 (1980) (plurality).

The Superior Court has also stated that, "blood alcohol level alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted. *Cusatis v. Reichert, supra; Couts v. Ghion, supra* (test must be given within a reasonable time after accident); *Schwarzbach v. Dunn,* [252

Pa. Super. 454, 381 A.2d 1295 (1977)] (test results, where test given three hours after accident, may not be extrapolated by expert who will testify as to probable blood alcohol level at time of accident)." *Ackerman v. Delcomico,* 336 Pa. Super. 569, 576, 486 A.2d 410, 414 (1984).

Initially, we note that Schutt was allegedly given a blood test at least five hours after the men had left the bar. This, coupled with the fact that the men left the bar with a six-pack, rendered the blood alcohol test irrelevant as to the issue of whether Schutt was served while visibly intoxicated five hours earlier.

Furthermore, there was no independent evidence to establish the fair inference of intoxication necessary to allow the admission of the blood alcohol test. The only independent evidence presented was that Schutt had consumed alcohol while at the tavern. Appellant's evidence did not meet the quantum of independent evidence required by the *Whyte, Suskey, Ackerman,* and *Couts* (plurality) decisions.

Finally, appellant's extrapolation witness was not present. The Superior Court has been wary of admitting evidence of a blood alcohol content without explanatory expert testimony. *Ackerman, supra* at 577, 486 A.2d at 414. The *Ackerman* court noted that "[w]ithout explanation, the blood alcohol content has little meaning to fact-finders and quite possibly great potential for resulting prejudice to the party against whom it is used." *Id.*[1]

---

1. The courts of the Commonwealth have viewed "relation back" testimony with skepticism. See *Johnson v. Harris, supra* at 552, 615 A.2d at 776 (citations omitted); *Locke v. Claypool,* 426 Pa. Super. 528, 536-37, 627 A.2d 801, 805 (1993); *Schwarzbach, supra* at 461, 381 A.2d at 1298. In light of this skepticism, we question whether

Since there was not sufficient independent evidence to show Schutt's intoxication at the time of being served, the possibility was too great that the jury would have placed undue emphasis on Schutt's alleged test results. Additionally, evidence of the test results was merely speculative in the absence of any witness to relate the test results back to the time Schutt was served alcohol. Therefore, we believe exclusion of such evidence was proper.

Faced with our preclusion of the evidence concerning the blood test results, appellant attempted to introduce Schutt's alleged plea of guilty to driving under the influence in a New York court. In that alleged plea, Schutt purportedly makes reference to the blood alcohol test result. It is respectfully submitted that our preclusion of evidence of Schutt's guilty plea was also proper.

First, appellant did not present a foundation or authentication of any document in her proffer of the plea. Additionally, we recognized that a guilty plea to driving under the influence may be admitted in a subsequent civil proceeding arising out of the same circumstances as an admission against interest. See *Cromley v. Gardner,* 253 Pa. Super. 467, 473, 385 A.2d 433, 436 (1978).

However, the admission of a party may not be introduced where it would "unduly prejudice another party against whom the statement is inadmissible." *Havasy v. Resnick,* 415 Pa. Super. 480, 488, 609 A.2d 1326, 1329 (1992). (citations omitted) Schutt's alleged guilty plea was not admissible against defendant Davis. Additionally, the alleged guilty plea also contained information regarding Schutt's blood alcohol level which

---

appellant's extrapolation witness would have been permitted to testify as to his attempt to relate the test results back over five hours. However, we need not reach that issue.

we have already stated was prejudicial and inadmissible. Therefore, we found Schutt's guilty plea inadmissible as an admission against interest.

Finally, we note that Schutt did not perform the purported blood alcohol test. Consequently, his guilty plea testimony as to the test rested on hearsay information. In addition, Schutt lacked personal knowledge of the test results and was therefore not qualified to testify as to those results. See *Lesher v. Henning,* 302 Pa. Super. 508, 513, 449 A.2d 32, 34 (1982). We therefore stand by our exclusion of evidence concerning Schutt's blood alcohol test and guilty plea.

In paragraph 34 appellant asserts the court was in error, abused its discretion and displayed its bias by refusing to recuse itself upon request of appellant's counsel "when it was clear that the court was not presiding over this matter in accordance with the established principles of law in the Commonwealth of Pennsylvania." Contrary to appellant's assertions, we diligently and correctly applied the law of this Commonwealth.

From the start of trial, appellant's counsel became increasingly frustrated with our rulings. Attorney Starker began to petulantly defy the court's rulings by repeatedly asking questions of witnesses concerning evidence which court had already ruled could not be introduced. As a result, Attorney Starker brought a contempt order upon himself. (See generally, N.T. 1-89; 90-94.)

The evidentiary failures of appellant's case were due to appellant's counsel's own lack of due diligence in discovery. We reject Attorney Starker's attempt to impugn the integrity of this court and his attempt to blame his failure to preserve his client's case on the court.

We had no doubt as to our ability to preside over this matter impartially. See *Commonwealth v. Goodman,* 454 Pa. 358, 361, 311 A.2d 652, 654 (1973); Code

of Judicial Conduct, Canon 3(C). We believe our rulings as to all issues were correct, impartial and unbiased applications of the law. Consequently, we did not believe that our impartiality could be reasonably questioned. *Id.* Therefore, we found paragraph 34 to be *without* merit.

In paragraph 35 of her motion, appellant asserts we erred by failing to permit her to introduce the testimony of two officers in rebuttal. The "admission or rejection of rebuttal evidence is within the sound discretion of the trial judge." *Yankowsky v. Katz Inc.*, 443 Pa. Super. 494, 500, 662 A.2d 665, 668 (1995). (citations omitted)

"The Pennsylvania Supreme Court [stated] the law on rebuttal testimony in *Downey v. Weston*, 451 Pa. 259, 268-69, 301 A.2d 635, 641 (1973):

"It is an elementary proposition that the plaintiff must prove during his case in chief all essential elements of his action as to which he has the burden of proof, and that he may not as a matter of right introduce evidence in rebuttal which is properly part of his case in chief. *Murphy v. [City of] Philadelphia*, 420 Pa. 490, 218 A.2d 323 (1966); *Jarvis v. Bell*, 296 Pa. 568, 146 A. 153 (1929). Laub, Penna. Trial Guide §116, at 248. The trial court has discretion in excluding as rebuttal evidence that which is properly part of the case in chief. *Flowers v. Green*, 420 Pa. 481, 218 A.2d 219 (1966); *Potochnik v. Pittsburgh Railways Co.*, 379 Pa. 154, 108 A.2d 733 (1954). See also, *Llewellyn v. Duquesne Light Co.*, 273 Pa. 17, 116 A. 530 (1922)." *Klyman v. SEPTA*, 331 Pa. Super. 172, 178-79, 480 A.2d 299, 303 (1984).

We believed the evidence offered in rebuttal by appellant was properly a part of her case in chief. Therefore, we stand by our decision to preclude such evidence.

In paragraph 36 of her motion, appellant asserts we erred by failing to allow her to reopen her case to mark exhibits for the record. The trial court is granted broad discretion in deciding whether to grant a party's motion to reopen its case after it has rested and the denial of such a motion for the opportunity to introduce additional evidence will not ordinarily be disturbed. *Commonwealth v. Deitch Co.*, 449 Pa. 88, 100-101, 295 A.2d 834, 841 (1972). Upon review of the record, we do not believe it was an abuse of our discretion to deny appellant's motion. (See N.T. 316-21.)

In paragraph 37, appellant claims we erred in denying her motion to amend the caption to include GBC Inc. and R.J.'s Tavern Inc. as new parties in this action. The "decision to grant or deny permission to amend is within the discretion of the trial court and will be reversed only upon a showing of abuse of discretion." *Zercher v. Coca-Cola USA*, 438 Pa. Super. 142, 145, 651 A.2d 1133, 1134 (1994), quoting *Pitts v. Port East Pulaski Highway*, 399 Pa. Super. 65, 67, 581 A.2d 677, 678 (1990). It is the settled rule that "a plaintiff may not add a new party after the expiration of the applicable statute of limitations." *Id.*, citing *Hoare v. Bell Telephone Co.*, 509 Pa. 57, 500 A.2d 1112 (1985); see also, *Aivazoglou v. Drever Furnaces*, 418 Pa. Super. 111, 118, 613 A.2d 595, 599 (1992).

Rule 2177 of the Pennsylvania Rules of Civil Procedure states that an action shall be prosecuted against a corporation in its corporate name. "A bona fide Pennsylvania corporation is a distinct legal entity; this includes a corporation that is a licensee under the Pennsylvania Liquor Code." *McCrery v. Scioli*, 336 Pa. Super. 455, 465, 485 A.2d 1170, 1175 (1984). (citation omitted) Therefore, appellant's motion to amend was an attempt to add a new party.

In Pennsylvania, actions for personal injuries must be brought within two years. 42 Pa.C.S. §5524(2). This cause of action arose on January 28, 1990. Appellant made the motion to amend on the first day of trial, July 18, 1995. Appellant has not alleged and there is no evidence that the defendants concealed the existence of the corporations. In fact, defendants revealed the existence of the corporations in their August 19, 1992 answer to the appellant's complaint. Since the statute of limitations had run, we stand by our decision to deny appellant's motion to amend.

In her 38th claim of error, appellant asserts that we erred by refusing to allow Marguerite Arnold to testify as to damages. We did not rule that Ms. Arnold could not testify as to damages. (See N.T. 2-17, 18-19.) In his opening statement, Attorney Starker stated that he would offer Marguerite Arnold as a witness to prove damages. (N.T. 51-52.) However, Attorney Starker failed to offer Ms. Arnold as a witness prior to resting his case in chief. Therefore, we believe no appealable issue was even created in this instance.